2007 UT 42

**Enrique MARTINEZ, Respondent,**

v.

**MEDIA–PAYMASTER PLUS/CHURCH OF JESUS CHRIST OF LATTER–DAY SAINTS, and Labor Commission of Utah, Petitioners.**

Nos. 20050745, 20050750.

Supreme Court of Utah.

May 18, 2007.

Richard R. Burke, Salt Lake City, for respondent.

Merrill F. Nelson, Christian S. Collins, Salt Lake City, for Media–Paymaster Plus.

Alan L. Hennebold, Salt Lake City, for Labor Commission.

Floyd W Holm, Murray, for amicus Workers' Compensation Fund.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Enrique Martinez petitioned the Utah Labor Commission (the "Commission") for an award of permanent total disability compensation against his former employer, Media–Paymaster Plus ("Media"). After an administrative law judge (the "ALJ") denied his claim and the Commission confirmed the decision, Martinez sought a writ of review from the Utah Court of Appeals. The court of appeals reversed the Commission's order and remanded the matter to the Commission to award Martinez benefits. We granted certiorari to determine (1) whether the court of appeals applied the correct standard of review, and (2) whether the employee or the employer bears the burden of proof when an employee seeks compensation under Utah Code section 34A–2–413(1)(c).

¶ 2 Regarding the first issue, the court of appeals reviewed under an abuse of discretion standard the Commission's determination that Martinez could perform the "essential functions" of his prior employment, as well as its determination that other work was "reasonably available" to him. Because we conclude that the court of appeals should have reviewed these determinations under a substantial evidence standard, we remand them to the court of appeals for consideration under the appropriate standard of review. With regard to the second issue, we conclude that an employee seeking an award of permanent total disability bears the burden of proving each of the four elements specified under section 34A–2–413(1)(c).

## BACKGROUND

¶ 3 On October 28, 1996, while performing temporary work as a movie extra for Media, Martinez slipped and fell on a wet floor, suffering injury to his cervical spine and right shoulder. Martinez had retired from state employment in 1995 after working for 28 years as a maintenance specialist. At the time of the accident, he was working part-time at a McDonald's restaurant. He continued to work there until December 1996. In September 1997, Martinez tried to return to work at Media, but no work was available. At that time, Martinez also tried to return to light-duty work at McDonald's but was told no such work was available. Martinez has not worked since leaving McDonald's in December 1996.

¶ 4 On July 31, 2000, Martinez filed an action with the Commission to compel Media to pay him permanent total disability compensation for his injuries. Section 34A–2–413 of the Workers' Compensation Act (the "Act") governs permanent total disability determinations. The relevant portions of the Act are as follows:

(b) To establish entitlement to permanent total disability compensation, the employee has the burden of proof to show by a preponderance of evidence that:

(i) the employee sustained a significant impairment ... as a result of the industrial accident or occupational disease that gives rise to the permanent total disability entitlement;

(ii) the employee is permanently totally disabled; and

(iii) the industrial accident or occupational disease was the direct cause of the employee's permanent total disability.

(c) To find an employee permanently totally disabled, the commission shall conclude that:

(i) the employee is not gainfully employed;

(ii) the employee has an impairment ... that limit[s] the employee's ability to do basic work activities;

(iii) the industrial or occupationally caused impairment ... prevent[s] the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident or occupational disease that is the basis for the employee's permanent total disability claim; and

(iv) the employee cannot perform other work reasonably available, taking into consideration the employee's:

(A) age;

(B) education;

(C) past work experience;

(D) medical capacity; and

(E) residual functional capacity.

Utah Code Ann. § 34A–2–413(1)(b)–(c) (2005) (amended 2006).

¶ 5 The ALJ denied Martinez's claim, finding that Martinez "failed to prove that he cannot perform the essential functions of work he was qualified to perform, and ... failed to prove that there is no other work reasonably available." Following the denial of his claim by the ALJ, Martinez appealed to the Commission. The Commission confirmed the ALJ's decision that Martinez had failed to satisfy two of the elements required to establish permanent total disability under section 34A–2–413. First, using Martinez's work at McDonald's as a benchmark, the Commission concluded that Martinez had failed to show that his impairments prevented him from performing the essential functions of his position at McDonald's. Second, the Commission concluded that Martinez had failed to prove that he was unable to perform other reasonably available work.

¶ 6 The court of appeals reversed the Commission's order, holding that (1) the Commission abused its discretion in concluding that

Martinez was capable of performing his prior job and other reasonably available work, and (2) the Commission incorrectly allocated the burden of proof. *Martinez v. Media–Paymaster Plus*, 2005 UT App 308, ¶¶ 9, 13, 16, 117 P.3d 1074.

¶ 7 In reversing the Commission on the first issue, the court of appeals reviewed for abuse of discretion the Commission's application of its findings of fact to the law. The court held that the Commission had abused its discretion in concluding that Martinez could perform the essential functions of a fast-food worker, *id.* ¶¶ 10–13, and in concluding that other work was reasonably available to Martinez, *id.* ¶¶ 14–15.

¶ 8 In reversing the Commission on the second issue, the court of appeals focused on the differences in language between Utah Code section 34A–2–413(1)(c) ("subsection (c)") and Utah Code section 34A–2–413(1)(b) ("subsection (b)").[1] Subsection (b) delineates three elements for which an "employee has the burden of proof" in order to establish entitlement to benefits for permanent total disability. Subsection (c) sets out four additional items that the "Commission shall conclude" before finding an employee permanently totally disabled. After determining that the statute was ambiguous with respect to which party bears the burden of proof under subsection (c), the court analyzed punctuation rules, canons of statutory construction, and public policy. It then determined that the employer bore the burden of proof under subsection (c). *Id.* ¶¶ 7–9.

¶ 9 We granted certiorari on two issues: (1) whether the court of appeals applied the correct standard in reviewing the Commission's order, and (2) whether the employee or the employer bears the burden of proof under Utah Code section 34A–2–413(1)(c).

## ANALYSIS

¶ 10 Regarding the first issue, we conclude that the court of appeals should have re-

---

1. In 2006, the legislature amended subsection (c) to clarify that the burden of proof under subsection (c) was intended to fall on the employee. Utah Code Ann. § 34A–2–413(1)(c) (Supp.2006). Because we find that the language of the 1995 version of the statute was unambiguous, we refrain from considering the statutory amendment.

*See Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 259, 261 (Utah 1998) (holding that the court does not look beyond an unambiguous statute and that retroactive legislative enactments are not applied in pending cases except in a few narrow circumstances not applicable here).

viewed the Commission's findings that Martinez could perform the essential functions of his prior employment and that other work was reasonably available to him under a substantial evidence standard but, in fact, improperly reweighed the Commission's factual determinations under the guise of reviewing the application of facts to law. Because the court of appeals should have considered these issues under a substantial evidence standard, we reverse and remand for consideration under the appropriate standard of review.

¶ 11 We similarly reverse the court of appeals' holding on the second issue. As a threshold matter, we find that the court of appeals correctly reviewed the Commission's statutory interpretation of Utah Code section 34A–2–413(1)(c) for correctness. We find, however, that the employee bears the burden of proof under section 34A–2–413(1)(c) because, when subsections (b) and (c) are read in context, it is clear that subsection (c) delineates the elements an employee must prove to meet his subsection (b)(ii) burden of establishing that he is permanently totally disabled.

## I. STANDARD OF REVIEW

¶ 12 We first consider Martinez's argument that the Commission's factual findings are inadequate as a matter of law. We then turn to Media's contention that the court of appeals erred by reviewing the Commission's factual findings despite Martinez's failure to marshal the evidence. Having disposed of these two threshold matters, we then consider the appropriate standard of review.

### A. The Commission's Factual Findings Are Not Inadequate as a Matter of Law

■ ¶ 13 Martinez argues that if the essential functions of his prior work and the reasonable availability of other work are factual issues, the Commission's factual findings on these issues are so inadequate as to require their reversal as a matter of law. In essence, Martinez argues that there is no "logical and legal basis for the [Commission's] ultimate conclusions," *see Milne Truck Lines, Inc. v. Pub. Serv. Comm'n*, 720

P.2d 1373, 1378 (Utah 1986), and that consequently, this court has no principled basis on which to sustain its factual findings, *see Mountain States Legal Found. v. Pub. Serv. Comm'n*, 636 P.2d 1047, 1051–52 (Utah 1981). In such an instance, marshaling is not required because "the findings are so inadequate that they cannot be meaningfully challenged as factual determinations." *Woodward v. Fazzio*, 823 P.2d 474, 477 (Utah Ct.App.1991).

■ ¶ 14 Martinez contends that it was irrational for the Commission to conclude that other work was reasonably available in the face of testimony by a vocational expert that Martinez could not perform any currently available jobs without some task modification. Martinez further points to the Commission's failure to mention Martinez's sitting and standing limitations in concluding that Martinez could perform the essential functions of his prior work. We disagree.

¶ 15 The Commission's conclusion that available fast-food positions could be modified to accommodate Martinez's limitations is a logical finding based on the presented evidence. Further, despite the Commission's failure to mention the sitting and standing requirement, its order did carefully consider Martinez's weight limitations on lifting and pushing, evidence of symptom magnification, and the fast-food industry's practice of assigning tasks according to the respective abilities of each individual employee. On the basis of this evidence, the Commission compared Martinez's abilities with the essential functions of fast-food work and concluded that "Mr. Martinez's work-related impairments do not prevent him from performing such functions." Thus, the Commission's failure to directly address Martinez's sitting and standing limitations or to allow for some task modification in reaching its conclusion that other work was reasonably available does not warrant reversal as a matter of law.

### B. Clarification of the Marshaling Requirement

¶ 16 During oral argument, Media argued that the court of appeals was required to dismiss Martinez's factual challenge to the

Commission's order because Martinez failed to properly marshal the evidence. Media further argued that this failure alone constitutes reversible error.[2] Media's argument is not well-taken and, in fact, evinces a fundamental misunderstanding of the marshaling obligation. We accordingly pause to clarify it.

¶17 To successfully challenge an agency's factual findings, the party "must *marshall* [sic] all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." *Grace Drilling Co. v. Bd. of Review of Indus. Comm'n*, 776 P.2d 63, 68 (Utah Ct.App.1989); *accord* Utah R.App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding.").[3] This requires counsel to construct the evidence supporting the adversary's position, and then "ferret out a fatal flaw in the evidence." *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991). Compliance with this undertaking helps ensure that the factual findings of the agency are overturned only when lacking in substantial evidence.

¶18 In our zeal to emphasize the importance of the marshaling requirement to parties, we have used language implying that appellate courts are strictly bound to affirm the accuracy of the agency's or trial court's factual findings in the absence of marshaling.

See, e.g., *United Park City Mines Co.*, 2006 UT 35, ¶32, 140 P.3d 1200 ("Because [the defendant] has failed to marshal the evidence supporting the ... award, ... we cannot conclude that the trial court abused its discretion."); *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶10, 94 P.3d 193 ("The court of appeals does not review the trial court's factual findings where the party challenging those findings fails to marshal the evidence. Instead, the court of appeals must assume that the record supports the findings of the trial court." (internal quotation marks and citation omitted)).

¶19 Despite this language, the marshaling requirement is not a limitation on the power of the appellate courts. Rather, it is a tool pursuant to which the appellate courts impose on the parties an obligation to assist them in conducting a whole record review. It is not, itself, a rule of substantive law. Consequently, parties that fail to marshal the evidence do so at the risk that the reviewing court will decline, in its discretion, to review the trial court's factual findings. *See Chen v. Stewart*, 2004 UT 82, ¶82 n. 16, 100 P.3d 1177 (explaining that the marshaling requirement is critical because in its absence the appellate court "must go behind the trial court's factual findings," which often requires a "colossal commitment of time and resources").

¶20 The reviewing court, however, retains discretion to consider independently the whole record and determine if the deci-

---

**2.** Although we address the implications of this argument, we do not concede the accuracy of its premise. Martinez did challenge the Commission's factual findings before the court of appeals, but did so under the theory that the factual findings were inadequate as a matter of law. *See Martinez*, 2005 UT App 308, ¶3, 117 P.3d 1074. Under such a theory, marshaling is not required. *Woodward*, 823 P.2d at 477. Further, the court of appeals did not purport to consider the sufficiency of the facts. *Martinez*, 2005 UT App 308, ¶3, 117 P.3d 1074. However, because we ultimately agree with Media's contention that "essential functions" and "reasonably available" are factual issues, we consider the implications of the argument.

**3.** The marshaling requirement applies when a party challenges a court's or an agency's factual findings, regardless of the standard of review at issue. *See, e.g., Wilson Supply, Inc. v. Fradan*

*Mfg. Corp.*, 2002 UT 94, ¶21, 54 P.3d 1177 (holding that to correctly dispute the lower court's factual findings as clearly erroneous, "an appellant must first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below"); *United Park City Mines Co. v. Stichting Mayflower Mountain Fonds*, 2006 UT 35, ¶¶37–38, 140 P.3d 1200 ("[P]arties who ask this court to consider fact-sensitive questions—including those questions reviewed under an abuse of discretion standard—have a duty to marshal all the evidence that formed the basis for the trial court's ruling.") Consequently, this discussion applies to the marshaling requirement generally, not just in the context of a challenge to an agency's factual findings.

sion below has adequate factual support. While parties have a duty to marshal the evidence when challenging the factual basis for a lower body's decision, we refrain, consistent with the Rules of Appellate Procedure, from dictating the remedy the court of appeals must impose when parties fail to meet this requirement. Utah R.App. P. 24(b)(k) ("Briefs which are not in compliance *may be* disregarded or stricken, on motion or sua sponte by the court . . . ." (emphasis added)).

¶ 21 In short, parties remain obligated by our rules to marshal the evidence when challenging the factual findings of a lower court. We refrain, however, from limiting the appellate courts' discretion by mandating a particular remedy when parties fail to meet this requirement. Having determined that the court of appeals retained the discretion to review Martinez's challenge to the Commission's factual findings, we turn to the standard of review question on which we granted certiorari.

C. *Whether Martinez Could Perform the "Essential Functions" of Fast–Food Work and Whether Other Work Was "Reasonably Available" to Him Are Factual Questions We Review for Substantial Evidence*

¶ 22 The court of appeals applied an abuse of discretion standard in reviewing the Commission's conclusions that Martinez "could perform the 'essential functions' of a fast food worker and that other work was 'reasonably available' for him." *Martinez v. Media–Paymaster Plus*, 2005 UT App 308, ¶ 10, 117 P.3d 1074 (quoting Utah Code Ann. § 34A–2–413(1)(c)(iii), (iv) (2005) (amended 2006)). The court of appeals appears to have based its selection of this standard of review on its conclusion that (1) the Act impliedly grants discretion to the Commission to apply "the facts to the Act"; and (2) it would consequently review only the Commission's application of the "facts that it found to the law." *Id.* ¶¶ 10–11.

¶ 23 We conclude that the court of appeals erred in applying an abuse of discretion standard of review because the provisions of Utah Code section 34A–2–413 call for

a factual determination. As a result, the court of appeals actually reweighed the Commission's factual determinations under the guise of applying the undisputed facts to the law. Because determining the "essential functions" of prior employment and ascertaining whether other work is "reasonably available" are factual issues, we remand the matter to the court of appeals for consideration under a substantial evidence standard of review.

¶ 24 Although we reverse the court of appeals with respect to the standard of review, we acknowledge the difficult issue it presents. Judicial review of Commission decisions is governed by both Utah Code section 34A–2–801 and Utah's Administrative Procedures Act (the "UAPA"). Utah Code Ann. § 34A–2–801(7)–(8) (2005). Section 63–46b–16(4)(d) of the UAPA allows relief when "the agency has erroneously interpreted or applied the law." *Id.* § 63–46b–16(4)(d) (2004). Subsection (4)(g) allows relief when "the agency action is based on a determination of fact . . . that is not supported by substantial evidence when viewed in light of the whole record before the court." *Id.* § 63–46b–16(4)(g). Finally, subsection (4)(h)(i) allows relief when an agency action is "an abuse of the discretion delegated to the agency by statute." *Id.* § 63–46b–16(4)(h)(i); *see also Ameritemps, Inc. v. Labor Comm'n*, 2005 UT App 491, ¶ 8, 128 P.3d 31 (finding that an abuse of discretion standard should be used "when an agency has discretion to apply its factual findings to the law" (citation omitted)).

¶ 25 The court of appeals is correct that agency actions are reviewed for abuse of discretion when there is an express or implied delegation within the statute. That truism, however, does not dictate the appropriate standard of review because codifying a factual issue does not transform an issue from one of fact to a mixed question of law and fact for purposes of determining the appropriate standard of review. Our task, therefore, is to determine, first, whether "essential functions" and "reasonably available" are factual, legal, or mixed issues and, second, the appropriate standard of review.

¶ 26 We discussed the distinctions between legal, factual, and mixed questions and their relationship to the appropriate standard of review in *State v. Pena*, 869 P.2d 932, 935–37 (Utah 1994). There, we defined factual questions as "entailing the empirical, such as things, events, actions, or conditions happening, existing, or taking place, as well as the subjective, such as state of mind." *Id.* at 935. In contrast, we defined legal determinations as "rules or principles uniformly applied to persons of similar qualities and status in similar circumstances." *Id.* We also recognized a third category, "the application of law to fact," which asks "whether a given set of facts comes within the reach of a given rule of law." *Id.* at 936.

¶ 27 Because the court of appeals analyzed whether the undisputed facts adequately met the statutory requirements of "essential functions" and "reasonably available,"[4] we give this third category close consideration. *See Martinez*, 2005 UT App 308, ¶ 11, 117 P.3d 1074. We begin with the proposition that the existence of an articulable legal issue is a necessary element of a mixed question. *Pena*, 869 P.2d at 937; *see, e.g., Pullman–Standard v. Swint*, 456 U.S. 273, 290 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (defining a mixed question of law and fact as occurring when "historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or ... whether the rule of law as applied to the established facts is or is not violated"). In other words, a mixed question is one in which we must

> determine when the articulated legal rule to be applied to a set of facts—a rule that we establish without deference to the trial courts—embodies a de facto grant of discretion which permits the trial court to reach one of several possible conclusions about the legal effect of a particular set of facts without risking reversal.

*Pena*, 869 P.2d at 937.

¶ 28 Therefore, when determining whether an issue presents a mixed question,

we must first identify the legal principle at issue. Our decision in *Drake v. Industrial Commission*, 939 P.2d 177 (Utah 1997), is illustrative. There, we were asked whether the court of appeals appropriately reviewed for legal correctness the issue of whether the petitioner was injured in the scope of her employment. *Id.* at 180. The Labor Commission, along with the employee's insurer, argued that scope of employment determinations were factual and consequently subject to a substantial evidence standard of review. *Id.* at 181 & n. 7. We rejected this argument, holding that whether facts fall under the "legal rule termed 'special errands,' ... requires some legal analysis." *Id.* Prior precedent and persuasive authority had established a legal, albeit highly fact dependent, rule for determining when a "special errand" fell within an employee's scope of employment. *Id.* at 183. Given the fact-dependent nature of the inquiry, however, we found that we could not "spell out in detail a legal rule that will adequately anticipate the facts that should be outcome determinative" for the policy behind the legal rule to be served. *Id.* at 182 (internal quotation marks omitted). Consequently, we determined that whether a "special errand" is within an employee's scope of employment is a mixed question of law and fact requiring some deference. *Id.* We further explained that when considering " 'whether a given set of facts comes within the reach of a given rule of law,' " *id.* at 181 (quoting *Pena*, 869 P.2d at 936), deference to the lower court is created when a legal standard is defined " 'so that it actually grants some operational discretion to the trial courts applying it,' " *id.* (quoting *State v. Vincent*, 883 P.2d 278, 282 (Utah 1994)).

¶ 29 In summary, factual issues are generally empirical, legal issues apply an abstract rule regardless of the specific facts, and mixed questions generally arise when the applicability of the legal rule turns on the combination of present facts. Having under-

---

**4.** Mixed questions are generally defined as the application of law to fact, *Pena*, 869 P.2d at 936, but the court of appeals transposed the standard and asked whether the Commission abused its discretion in "applying the facts that it found to

the law." *Martinez*, 2005 UT App 308, ¶ 11, 117 P.3d 1074. Because it appears that the court of appeals intended to treat "essential functions" and "reasonably available" as mixed questions of law and fact, we proceed from that premise.

taken this attempt to flesh out the distinctions between questions of law, questions of fact, and mixed questions of law and fact, we turn to the issues presented here.

## 1. Essential Functions

¶ 30 Whether certain tasks are "essential functions" varies from job to job and industry to industry. A judge is ill-equipped to determine, with his or her legal expertise, the essential elements of a fast-food job. Rather, that determination must be based on factual evidence and testimony from those with experience in the industry. Additionally, there is no legal rule that could create the basis for a mixed question of fact and law. While the adjective "essential" does introduce a level of abstraction into the factfinder's determination, it does not create a mixed question any more than the modifier "reasonable" changes the reasonable man standard into a legal determination. *Cf. Benson v. Ames,* 604 P.2d 927, 929 (Utah 1979) (finding that negligence under a reasonable man standard is a factual determination disrupted on appeal only if substantial evidence fails to support the trial court's ruling). We consequently hold that the question of whether an employee can perform the "essential functions" of prior employment is a factual determination that should be overturned on appeal only if substantial evidence fails to support it.

## 2. Reasonably Available

¶ 31 The second issue, whether other work was "reasonably available" to Martinez, is a closer question. In different contexts, reasonableness has been considered both a legal and a factual question. *See, e.g., Benson,* 604 P.2d at 929 (finding that whether a defendant acted as a "reasonable man" in a negligence case is an issue for the trier of fact that should not be disturbed on appeal if it is supported by substantial evidence). *But see, e.g., Evans v. State,* 963 P.2d 177, 179 (Utah 1998) (finding that "reasonable cause" was primarily a legal question in the antitrust arena, but that appellate courts should grant the fact-finder a "measure of discretion"); *Salmon v. Davis County,* 916 P.2d 890, 892 (Utah 1996) ("[T]he reasonableness of an award of attorney fees ordinarily presents a question of law with some measure of discretion given to the trial court."). Additionally, the Labor Commission has defined "reasonably available" as "regular, steady, and readily available" work, Utah Admin. Code r. 612–1–10(D)(1)(b), a definition that reads like a legal rule to be applied to a factual situation.

¶ 32 Despite these countervailing examples, we conclude that the question of whether other work is "reasonably available" is a factual determination. The statute asks the Commission to determine if other work is reasonably available, "taking into consideration the employee's[ ] ... age; ... education; ... past work experience; ... medical capacity; and ... residual functional capacity." Utah Code Ann. § 34A–2–413(1)(c)(iv). These factual considerations inform what is reasonable; its parameters are not further defined by an overarching legal principle, as in the case of reasonable suspicion, for example. *See Pena,* 869 P.2d at 939.

¶ 33 Our conclusion that "essential functions" and "reasonably available" are factual determinations is consistent with both our prior precedent and the applicable statutory language. First, we have traditionally viewed permanent total disability determinations as factual. *Hodges v. W. Piling & Sheeting Co.,* 717 P.2d 718, 721 (Utah 1986); *Kerans v. Indus. Comm'n,* 713 P.2d 49, 54 (Utah 1986); *Brundage v. IML Freight, Inc.,* 622 P.2d 790, 792 (Utah 1980); *Utah State Rd. Comm'n v. Indus. Comm'n,* 109 Utah 553, 168 P.2d 319, 322 (Utah 1946). Second, as discussed herein, the language of subsection (b) requires the employee to prove permanent total disability by a "*preponderance of the evidence*," using the elements of subsection (c) to meet that evidentiary burden (emphasis added).

¶ 34 In sum, we conclude that the court of appeals erroneously applied an abuse of discretion standard when reviewing the Commission's factual findings that Martinez was capable of performing the "essential functions" of his prior job and that he was capable of performing other work "reasonably available" to him.

### D. The Correct Standard of Review Is Substantial Evidence

¶ 35 Having determined that the correct standard of review is substantial evidence, we pause to consider its requirements. Substantial evidence exists when the factual findings support "more than a mere scintilla of evidence . . . though something less than the weight of the evidence." *Grace Drilling Co. v. Bd. of Review of Indus. Comm'n,* 776 P.2d 63, 68 (Utah Ct.App.1989) (internal quotation marks and citation omitted, alteration in original). An administrative law decision meets the substantial evidence test when "a reasonable mind might accept as adequate" the evidence supporting the decision. *Id.* (internal quotation marks and citation omitted).

¶ 36 In order to determine whether a decision is supported by substantial evidence, the reviewing court must consider the whole record before the lower court. *Whitear v. Labor Comm'n,* 973 P.2d 982, 984 (Utah Ct.App.1998) (citing Utah Code Ann. § 63–46b–16(4)(g) (1997)). Whole record review considers the evidence in support of the administrative finding, as well as evidence that detracts from the finding. *Id.* To aid the appellate court in conducting a whole record review, the party challenging the factual findings must marshal all of the evidence and demonstrate that, despite the facts supporting the decision, the "findings are not supported by substantial evidence." *Grace Drilling Co.,* 776 P.2d at 68.

¶ 37 When we consider the actual substance of the court of appeals' ruling that Martinez could not perform the "essential functions" of his past employment, the effect of a different standard of review becomes clear. For instance, it does appear, as the court of appeals stated, that the "Commission simply ignored the impact of the sitting and standing limitation." *Martinez v. Media–Paymaster Plus,* 2005 UT App 308, ¶ 13, 117 P.3d 1074. However, with the statement "The Commission ignored a significant *portion* of an evaluation that it explicitly accepted," *id.* (emphasis added), the court of appeals implicitly acknowledged that some of the Commission's factual findings were supportive of its ultimate conclusion. This acknowledgment has different implications under a substantial evidence standard; if more than a scintilla of the evidence supports the conclusion, then the Commission's ruling should remain intact.

¶ 38 As a natural consequence of selecting the wrong standard of review, the court of appeals reweighed the facts that formed the basis of the Commission's conclusion that other work was "reasonably available" under the guise of applying the facts to the law. For example, the court of appeals stated that the Labor Commission ignored Dr. Bertsch's cross-examination testimony that no jobs in the current market could accommodate Mr. Martinez's limitations. *Id.* ¶ 15. The Commission's order, however, merely gave more weight to the portion of her testimony that was more favorable to its factual findings. In fact, Dr. Bertsch testified that she had contacted many local fast-food restaurants with open positions and their managers expressed a willingness to hire someone with Martinez's limitations. Although recognizing that some task modification would be required, the Commission found that fast-food work requires the completion of a "variety of tasks . . . performed by a crew of several employees." It further found that Martinez's education, work experience, and language ability would increase his employability. This evidence supports the Commission's conclusion that "Media [had] presented persuasive evidence that many employers in the fast-food business have work immediately available for someone with Mr. Martinez' background and abilities."

¶ 39 In sum, we find that the court of appeals should have applied a substantial evidence standard of review to the questions of whether Martinez could perform the "essential functions" of his prior employment and whether other jobs were "reasonably available" to him. Because it applied the incorrect standard of review, the court of appeals inappropriately reweighed the Commission's factual findings under the guise of reviewing mixed questions of law and fact. Consequently, we remand for a determination under the correct standard of review.

## II. THE EMPLOYEE BEARS THE BURDEN OF PROOF UNDER UTAH CODE SECTION 34A–2–413(1)(c)

¶ 40 The parties and the amicus disagree on the standard of review applicable to the Commission's ruling on the burden of proof issue, so we consider this threshold matter first.

### A. We Afford No Deference to the Commission on Matters of Statutory Construction

¶ 41 Burden of proof questions typically present issues of law that an appellate court reviews for correctness. *Beaver County v. State Tax Comm'n,* 916 P.2d 344, 357 (Utah 1996). Amicus Workers' Compensation Fund ("WCF"), however, contends that we should defer to the Commission's conclusion regarding the burden of proof because the legislature impliedly granted the Commission discretion to decide the issue under Utah Code section 34A–2–413(1)(c). WCF reasons that "where the legislature either expressly or implicitly grants [an] agency discretion to interpret or apply a statutory term," appellate courts should defer to the agency's interpretation unless it constitutes an abuse of discretion. *Luckau v. Bd. of Review of Indus. Comm'n,* 840 P.2d 811, 813 (Utah Ct.App.1992); *accord Morton Int'l, Inc. v. Auditing Div. of State Tax Comm'n,* 814 P.2d 581, 588–89 (Utah 1991) (superseded by Utah Code section 59–1–610(1)(b) for the specific instance of administrative decisions by the Utah State Tax Commission as stated in *49th St. Galleria v. Tax Comm'n, Auditing Div.,* 860 P.2d 996 (Utah Ct.App. 1993)). WCF contends that subsection (c) impliedly grants such discretion to the Commission because the listed requirements for a permanent total disability determination are prefaced with the clause "the commission shall conclude."

¶ 42 We disagree and hold that the language of subsection (c) grants the Commission authority to determine only whether the facts presented meet the statute's requirements for a finding of permanent total disability. It does not bestow on the Commission the authority to allocate the burden of proof.

¶ 43 Our conclusion in this regard is consistent with the legislature's more general delegation of authority to the Commission found in Utah Code section 34A–1–301, which bestows on the Commission "the duty and the full power, jurisdiction, and authority to determine the facts and apply the law in this chapter or any other title or chapter it administers." Utah Code Ann. § 34A–1–301 (2005). We previously have held that section 34A–1–301 does not grant the Commission discretion for statutory interpretation. *Esquivel v. Labor Comm'n,* 2000 UT 66, ¶ 18, 7 P.3d 777.

¶ 44 It is also consistent with our case law on implied agency delegation. In *Salt Lake City Corp. v. Department of Employment Security,* 657 P.2d 1312, 1315–17 (Utah 1982), we acknowledged the Commission's latitude in affirming its award of unemployment benefits to a state employee who had voluntarily left her job. The statute at issue in that case provided that unemployment benefits were generally unavailable when employees voluntarily quit, but allowed the Commission to award benefits when required by "equity and good conscience." *Id.* at 1317. We conclude that this language implicitly "bespeak[s] a legislative intent to delegate ... interpretation to the responsible agency." *Morton,* 814 P.2d at 588 (internal quotation marks and citation omitted). In contrast, however, subsection (c) only gives the Commission discretion to "find" the facts required to establish the elements of permanent total disability.

¶ 45 Our conclusion is also consistent with the principle that grants of discretion to administrative agencies should be limited to those issues on which the agencies have "special experience or expertise placing [them] in a better position than the courts to construe the law." *King v. Indus. Comm'n,* 850 P.2d 1281, 1286 (Utah Ct.App.1993). Here, however, there is nothing to suggest that the Commission is in a better position than this court to construe the statutory allocation of the burden of proof. We consequently hold that the court of appeals appropriately applied a correctness standard when assessing which party bore the burden of proof under subsection (c).

## B. The Employee Bears the Burden of Proving the Elements of Permanent Total Disability

¶ 46 We review the court of appeals' statutory interpretation of section 34A–2–413(1)(c) for correctness. *See State v. Ireland,* 2006 UT 82, ¶ 6, 150 P.3d 532. When interpreting statutes, we look first to the statute's plain language with the primary objective of giving effect to the legislature's intent. *Savage v. Utah Youth Vill.,* 2004 UT 102, ¶ 18, 104 P.3d 1242. "We presume that the legislature used each word advisedly" and read "each term according to its ordinary and accepted meaning." *State v. Barrett,* 2005 UT 88, ¶ 29, 127 P.3d 682 (internal quotation marks and citation omitted). Statutes should be read as a whole and their provisions interpreted in harmony with related provisions and statutes. *Miller v. Weaver,* 2003 UT 12, ¶ 17, 66 P.3d 592.

¶ 47 When the language of the statute is plain, other interpretive tools are not needed. *Adams v. Swensen,* 2005 UT 8, ¶ 8, 108 P.3d 725. However, if the language is ambiguous, the court may look beyond the statute to legislative history and public policy to ascertain the statute's intent. *Utah Pub. Employees Ass'n v. State,* 2006 UT 9, ¶ 59, 131 P.3d 208 (Parrish, J., concurring). When viewed holistically, a statute is ambiguous if duplicative, yet plausible meanings are not eliminated from possibility. *Id.* ¶ 60.

¶ 48 Having acknowledged these rules, we consider the plain language of section 34A–2–413(1) of the Act, which outlines the threshold requirements an employee must meet to receive compensation for permanent total disability. Subsection (b) states that the employee has the burden of proving three subparts: (i) that the employee was significantly impaired as a result of an industrial accident or occupational disease; (ii) that "the employee is permanently totally disabled"; and (iii) that "the industrial accident or occupational disease was the direct cause of the employee's permanent total disability." Utah Code Ann. § 34A–2–413(1)(b)(i)–(iii) (2005).

¶ 49 We next turn to subsection (c), which states that "[t]o find an employee permanent-ly totally disabled, the commission shall" reach four necessary conclusions:

(i) the employee is not gainfully employed; (ii) the employee has an impairment or combination of impairments that limit the employee's ability to do basic work activities; (iii) the ... impairments prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident ... and (iv) the employee cannot perform other work reasonably available, taking into consideration the employee's age; education; past work experience; medical capacity; and residual functional capacity.

*Id.* § 34A–2–413(1)(c) (amended 2006).

¶ 50 Although subsection (c) does not explicitly allocate the burden of proof, a reading of the statute as a whole makes clear that it falls to the employee. Both subsections (b) and (c) include the same critical phrase: "permanently totally disabled." Subsection (b)(ii) cursorily states that "the employee has the burden of proof to show by a preponderance of evidence that" he or she "is permanently totally disabled." It is unclear, however, from the wording of subsection (b)(ii) what is required for the employee to prove permanent total disability. Subsection (c) simply enumerates those requirements. In short, subsection (c) imbues subsection (b)(ii) with meaning.

¶ 51 The court of appeals' interpretation, allocating subsection (c)'s burden of proof to the employer, renders meaningless the employee's responsibility to prove permanent total disability under (b)(ii). We avoid construing "a particular provision of a statute so as to neutralize ... other provisions if any other construction of the particular provision is at all tenable." *Chris & Dick's Lumber & Hardware v. Tax Comm'n,* 791 P.2d 511, 516 (Utah 1990) (Howe, J., dissenting).

¶ 52 The plain language of subsection (c) further bolsters our interpretation that the employee bears the burden of proof. In each of subsection (c)'s four subparts, "the employee" must be in a particular posture in order to be found permanently totally disabled. These elements of proof turn on

intimate facts about the employee's circumstances—his unemployment or how his medical capacity or age affects his ability to do reasonably available work, for example. The fact that the employee is in the best position to proffer evidence relevant to these factual determinations further supports our interpretation that the employee bears the burden of proof under subsection (c).

¶ 53 The court of appeals' interpretation, on the other hand, mandates that the employer disprove the elements of subsection (c), which would require judicially created additions to and subtractions from the statute's plain language. For example, subsection (c)(i) requires proof that "the employee is not gainfully employed." Under the court of appeals' reading, the employer would have to prove that the employee *is* gainfully employed. *See Martinez v. Media–Paymaster Plus*, 2005 UT App 308, ¶ 9, 117 P.3d 1074. Although we concede that section 34A–2–413(1)(c) was not artfully drafted, we refrain from creating clarity by reading additional terms into the statute.

¶ 54 In conclusion, we reverse the court of appeals because we can find only one plausible reading of the statute based on its plain language—namely, that the employee has the burden of proving the elements of subsection (c).[5]

## CONCLUSION

¶ 55 The court of appeals should have applied a substantial evidence standard of review to the Commission's conclusions that other work was "reasonably available" to Martinez and that he could have performed the "essential functions" of a fast-food employee. Consequently, we reverse the court of appeals and remand for a determination under the appropriate standard of review. We also reverse the court of appeals' allocation of the burden of proof. We hold that

under the plain language of Utah Code section 34A–2–413(1), the employee bears the burden of proving the four elements of subsection (c).

¶ 56 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH'S opinion.

---

5. Having reached this legal conclusion, we remain mystified about its effect on the outcome of this case. Usually, burden of proof questions are outcome determinative only in the case of an evidentiary draw. And in their briefs to us, neither party asserts that was the case here. Thus, even had we upheld the court of appeals' decision on the burden of proof issue, it is unclear

whether that conclusion would have required the Commission to reverse its initial denial of permanent total disability. We encourage parties to consider and brief the effect of their legal challenges on a case's outcome so that we can better advise lower courts about the ramifications of our rulings.