*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 32**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

PROVO CITY and WORKERS COMPENSATION FUND,
*Petitioners*,

*v.*

UTAH LABOR COMMISSION and DUANE SERRANO,
*Respondents*.

No. 20120724
Filed February 6, 2015

Original Proceeding in this Court

Attorneys:

Hans M. Scheffler, Salt Lake City, for petitioners

Alan L. Hennebold, Jaceson R. Maughan,
Gary E. Atkin, Marsha S. Atkin, Salt Lake City,
for respondents

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1    While driving a truck within the scope of his employment with Provo City, Duane Serrano was injured in a car accident. He later applied for and received permanent total disability benefits. Provo City and the Workers Compensation Fund (collectively, WCF) appealed from the Utah Labor Commission's order awarding benefits, arguing that (1) Mr. Serrano failed to prove the elements of a permanent total disability claim; (2) the administrative law judge abused her discretion because she initially denied Mr. Serrano's claim, but then awarded benefits after the labor commission instructed her to reconsider the evidence; and (3) any award of benefits should not commence on the date that he was deemed to be permanently and totally disabled because of the extraordinary delay in resolving Mr. Serrano's claim. We conclude that none of these arguments merit reversal, and we affirm the labor commission's award of benefits.

## BACKGROUND

¶2 Mr. Serrano was employed by Provo City as a facility service technician. While driving a truck within the scope of his employment, he was injured in an automobile accident. Mr. Serrano alleged that the accident aggravated a congenital spine condition, leading to chronic pain and other disabilities. After the accident, Mr. Serrano continued to work for Provo City. But more than four years later, he concluded that his symptoms were no longer manageable and requested an assignment to a less physically demanding job. When Provo City replied that a suitable position was not available, Mr. Serrano quit.

¶3 Mr. Serrano subsequently applied for permanent total disability compensation under the Workers' Compensation Act, alleging that by the time he quit, his condition had deteriorated to the point that he could no longer work. The administrative law judge assigned to adjudicate his claim received into evidence over twenty medical evaluations made by doctors and other experts. Although the evaluators generally agreed that Mr. Serrano suffered from continuing impairment caused by the accident, they differed as to its degree. Some doctors opined that Mr. Serrano was malingering, and that he could work if certain restrictions were observed. Another expert concluded that Mr. Serrano suffered from chronic pain and other ailments aggravated by even basic work activities and that, as a result, he was permanently and totally disabled.

¶4 After reviewing this evidence, the administrative law judge found that Mr. Serrano had not proven all of the required elements to receive permanent total disability compensation and dismissed his claim with prejudice. Mr. Serrano filed a motion for review with the Utah Labor Commission. The labor commission set aside the administrative law judge's order because it concluded that the judge should have appointed a medical panel to review Mr. Serrano's claim. The labor commission therefore remanded the case back to the judge with directions to appoint a medical panel and to issue a new decision in light of the entire record.

¶5 On remand, the administrative law judge referred the case to a medical panel for review. After reviewing the medical panel's report and the medical evidence, the administrative law judge found that the preponderance of the evidence showed that Mr. Serrano was permanently and totally disabled as a result of his accident and awarded him permanent disability payments. The WCF filed a motion for review with the labor commission, asserting that the

2

judge's order was in error. The commission affirmed the administrative law judge's order. The WCF appealed, and the court of appeals certified the case to this court.

## ANALYSIS

### I. PERMANENT TOTAL DISABILITY

¶6 The elements of a permanent total disability claim are laid out in Utah Code section 34A-2-413(1)(b):

> To establish entitlement to permanent total disability compensation, the employee shall prove by a preponderance of evidence that:
>
> > (i) the employee sustained a significant impairment or combination of impairments as a result of the industrial accident or occupational disease . . . ;
> >
> > (ii) the employee has a permanent, total disability; and
> >
> > (iii) the industrial accident or occupational disease is the direct cause of the employee's permanent total disability.

The statute further provides that permanent total disability is comprised of four elements. In order to "establish that an employee has a permanent, total disability[,] the employee shall prove" that:

> > (i) the employee is not gainfully employed;
> >
> > (ii) the employee has an impairment or combination of impairments that limit the employee's ability to do basic work activities;
> >
> > (iii) the industrial or occupationally caused impairment or combination of impairments prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident or occupational disease that is the basis for the employee's permanent total disability claim; and
> >
> > (iv) the employee cannot perform other work reasonably available.

UTAH CODE § 34A-2-413(1)(c). Thus, taken as a whole, the permanent total disability statute requires workers to prove six elements: (1) "the employee sustained a significant impairment;" (2) "the

employee is not gainfully employed;" (3) "the employee has an impairment or combination of impairments that limit the employee's ability to do basic work activities;" (4) the impairment or impairments "prevent the employee from performing the essential functions of the work activities for which the employee" had been qualified at the time of the accident; (5) "the employee cannot perform other work reasonably available;" and (6) "the industrial accident or occupational disease is the direct cause of the employee's permanent total disability." *Id.* § 34A-2-413(1)(b)–(c).

¶7    The WCF argues that the labor commission erred when it awarded permanent total disability payments because Mr. Serrano failed to prove any of the six necessary elements for such an award. In analyzing the WCF's arguments, we first determine the standard of review for each element of a permanent total disability claim. We then apply the appropriate standard of review to each of the WCF's assertions of error.

*A. Standard of Review*

¶8    Utah Code section 63G-4-403(4) authorizes appellate courts to grant relief to a party substantially prejudiced by an error in the final disposition of a claim adjudicated by an administrative agency. This statute lists several categories of remediable errors and implies a standard of review for some, but not all, of these errors. *Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 19, 308 P.3d 461. The statute, for example, authorizes appellate courts to grant relief where an "agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court." UTAH CODE § 63G-4-403(4)(g). Thus, a challenge to an administrative agency's finding of fact is reviewed for substantial evidence. *Murray*, 2013 UT 38, ¶ 19. "A decision is supported by substantial evidence if there is a quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Becker v. Sunset City*, 2013 UT 51, ¶ 10, 309 P.3d 223 (internal quotation marks omitted). "In conducting a substantial evidence review, we do not reweigh the evidence and independently choose which inferences we find to be the most reasonable." *Id.* ¶ 21 (internal quotation marks omitted). "Instead, we defer to [an administrative agency's] findings because when reasonably conflicting views arise, it is the [agency's] province to draw inferences and resolve these conflicts." *Id.* (internal quotation marks omitted).

¶9    Other remediable errors identified in section 63G-4-403(4), however, are not accompanied by a standard of review. When reviewing these types of errors, we apply our traditional standards of review. *Murray*, 2013 UT 38, ¶ 21. One example is subsection (4)(d), which permits appellate courts to grant relief where an "agency has erroneously . . . applied the law." UTAH CODE § 63G-4-403(4). When reviewing this kind of alleged agency error, we employ one of our established standards of review for mixed questions of law and fact. *Murray*, 2013 UT 38, ¶ 24. The level of deference we afford to an agency's resolution of mixed questions varies depending upon the nature of the mixed question under review. *Id.* ¶ 36.

¶10   In order to determine the appropriate standard of review for the WCF's challenges to the labor commission's findings on the six elements of a permanent total disability claim, we must decide whether each element presents either a pure question of fact or a mixed question of law and fact. "Factual questions are generally regarded as entailing the empirical, such as things, events, actions, or conditions happening, existing, or taking place, as well as the subjective, such as state of mind." *State v. Pena*, 869 P.2d 932, 935 (Utah 1994). A mixed question of law and fact, on the other hand, involves the application of a legal standard to an established set of facts. *Id.* at 936. In other words, the characteristic that distinguishes a mixed question from a question of fact is "the existence of an articulable legal issue." *Martinez v. Media-Paymaster Plus*, 2007 UT 42, ¶ 27, 164 P.3d 384.

¶11   Because the third, fourth, and fifth elements of a permanent total disability claim are similar, we examine these elements first to determine whether they present questions of fact or mixed questions. We then determine the standard of review for the first, second, and sixth elements in turn.

1. The Third, Fourth, and Fifth Elements

¶12   In *Martinez*, we established the standard of review for the fourth and fifth elements of a permanent total disability claim. We held that the fourth element—whether an employee can perform the essential functions of jobs the employee had been qualified for at the time of the accident—is a question of fact. *Id.* ¶ 30. We reasoned that the questions of what the essential functions of a job are and whether a particular person is medically able to perform those functions were matters for experts and did not involve the application of a legal standard. *Id.* We likewise concluded that the fifth element—whether an employee can perform other work reasonably available—is a

question of fact because this element does not require the application of a legal standard. *Id.* ¶ 32.

¶13 We have not specifically addressed the standard of review for the third element of a permanent total disability claim—whether the employee has a limited ability to perform basic work activities. Due to the similarities between the third element and the fourth and fifth elements, we conclude that the third element likewise presents a question of fact. The third, fourth, and fifth elements assess an employee's ability to perform work activities: basic work activities, the work activities of prior employment, or the work activities of other employment reasonably available. UTAH CODE § 34A-2-413(1)(c)(ii)–(iv). Because the third element, like the fourth and fifth elements, depends on empirical evidence and expert testimony regarding an employee's ability to perform certain functions, it likewise present a question of fact. *See Martinez*, 2007 UT 42, ¶¶ 30–32.

¶14 We therefore review the ultimate findings in the third, fourth, and fifth elements of a permanent total disability claim for substantial evidence.

2. The First Element

¶15 Under the first element of a total, permanent disability claim, an employee must prove he or she "sustained a significant impairment or combination of impairments as a result of the industrial accident or occupational disease." UTAH CODE § 34A-2-413(1)(b)(i). This element is fundamentally different from the third, fourth, and fifth elements discussed above because it is not possible to resolve the question of whether an employee has proven that he or she has sustained a significant impairment without referring to a legal standard. The question of whether an employee is physically able to perform a particular job can be resolved through an examination of the medical evidence and the opinions of medical and vocational experts. The application of a legal rule is not necessary to the resolution of this question. *Martinez*, 2007 UT 42, ¶¶ 30–32.

¶16 The question of whether a particular impairment is "significant," however, requires a court to evaluate the severity of the impairment and determine whether the level of impairment exceeds a minimum threshold. Similar to a determination of whether a search or seizure is "reasonable" in the context of the Fourth Amendment, a court cannot resolve the question of whether an impairment is "significant" without applying a legal definition of that term to the facts of the case. *See Manzanares v. Byington (In re*

*Adoption of Baby B.*), 2012 UT 35, ¶ 44, 308 P.3d 382 (reasonable search and seizure determinations are mixed questions of law and fact). This inquiry, therefore, is a mixed question of law and fact.

¶17 A mixed question of law and fact may implicate one of three standards of review, depending upon the type of challenge made on appeal. First, we review the lower tribunal's resolution of factual disputes deferentially. *Jeffs v. Stubbs*, 970 P.2d 1234, 1244 (Utah 1998). For appeals from administrative decisions, we review the administrative body's findings of fact under the substantial evidence standard. *Drake v. Indus. Comm'n*, 939 P.2d 177, 181 (Utah 1997). Second, we review the law applied to these facts for correctness. *Baby B.*, 2012 UT 35, ¶ 47. And third, we review the lower tribunal's ultimate conclusion of "whether a given set of facts comes within the reach of a given rule of law" as a mixed question of law and fact. *Pena*, 869 P.2d at 936. This review may be either deferential or de novo, depending on the nature of the particular mixed question. *Baby B.*, 2012 UT 35, ¶ 42.

¶18 In this appeal, the WCF challenges the labor commission's findings of fact regarding the severity of Mr. Serrano's impairment. We accordingly evaluate this argument under the substantial evidence standard of review.

3. The Second Element

¶19 Under the second element, the labor commission must determine whether the individual seeking benefits is gainfully employed. UTAH CODE § 34A-2-413(1)(c)(i). As we note below, the WCF mounts a legal challenge to the labor commission's finding on this element, asserting that the WCF's concession that Mr. Serrano was unemployed was no longer valid when the commission awarded benefits. Because this issue was not preserved, we do not address it. *Infra* ¶¶ 25–27. We therefore need not resolve the standard of review for the second element.

4. The Sixth Element

¶20 Finally, the sixth element requires an employee to prove that a work accident "is the direct cause of the employee's permanent total disability." UTAH CODE § 34A-2-413(1)(b)(iii). In cases where there is no preexisting condition contributing to a disability, the employee need only prove that the work accident is the medical cause of the disability. *Murray*, 2013 UT 38, ¶ 45. Under the medical causation test, the employee must show that an accident is the but-for cause of the disability. *Allen v. Indus. Comm'n*, 729 P.2d 15, 27 (Utah 1986).

¶21 In cases where a preexisting condition is a contributing factor to the disability, the employee must prove both medical causation and legal causation. *Murray*, 2013 UT 38, ¶¶ 45–46. "To meet the legal causation requirement, a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition." *Allen*, 729 P.2d at 25. "[T]his heightened showing of legal cause is necessary to distinguish those injuries which . . . coincidentally occur at work because a preexisting condition results in symptoms which appear during work hours without any enhancement from the workplace." *Murray*, 2013 UT 38, ¶ 46 (second alteration in original) (internal quotation marks omitted).

¶22 Here, the WCF challenges the manner in which the labor commission determined that the car accident was the legal cause of Mr. Serrano's disability. *Infra* ¶ 35. Because the WCF asserts a legal challenge to the method of determining legal causation, we review this argument de novo. *See Baby B.*, 2012 UT 35, ¶ 47 ("[A]ppellate courts have traditionally been seen as having the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction . . . ." (internal quotation marks omitted)).

*B. Substantial Evidence of Permanent Total Disability*

1. The First Element: Significant Impairment

¶23 In support of its conclusion that Mr. Serrano suffered from a significant impairment, the labor commission found that his injuries prevented him "from lifting, pushing or pulling more than 25 pounds or working at heights." The commission further noted that the "medical panel determined Mr. Serrano sustained a 6% whole-person impairment as a result of the accident."

¶24 Citing the deferential substantial evidence standard of review, the WCF asserts that the evidence does not support these factual findings. An examination of the record reveals, however, that substantial evidence sustains these findings. The medical panel, which reviewed all of the relevant medical evidence, determined that Mr. Serrano could not work on ladders "or unprotected heights" and that he could not move objects weighing more than 25 pounds. The panel also concluded that Mr. Serrano merited a "6% Whole Person Impairment" rating as a result of his accident. This evidence directly supports the findings of fact made by the labor commission and is substantial. *See Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 2011 UT 54, ¶ 11, 266 P.3d 751 ("A decision is supported by substantial evidence if there is a quantum and quality of relevant

evidence that is adequate to convince a reasonable mind to support a conclusion." (internal quotation marks omitted)).

2. The Second Element: No Gainful Employment

¶25 At the hearing on Mr. Serrano's claim, the WCF conceded that Mr. Serrano was not gainfully employed. When the labor commission reversed the administrative law judge's initial denial of permanent total disability payments, it directed the judge to appoint a medical panel to review the evidence. The labor commission further instructed the judge that after she received the medical panel's report, she was to "issue a new decision that resolves Mr. Serrano's various claims in light of the entire record." The administrative law judge interpreted the labor commission's remand order to mean that the only new evidence to be considered would be the medical panel's report. The judge, therefore, instructed the medical panel to review only the evidence presented at the initial hearing when preparing its report, and the parties presented no additional evidence before the judge issued her second order. The WCF presented no objection to the administrative law judge's decision not to consider new evidence on remand.

¶26 The WCF now argues, however, that since no new evidence was presented after the labor commission remanded the case for reconsideration, its concession that Mr. Serrano was not gainfully employed was no longer valid when the administrative law judge issued its second order. Thus, it asserts that no evidence supports the conclusion that Mr. Serrano was unemployed at the time the judge issued the order challenged in this appeal.

¶27 The WCF's position fails because it was not asserted below. The WCF couches its argument as a substantial evidence challenge, but in truth it is arguing that the administrative law judge's decision to reconsider the evidence as it existed at the time of the evidentiary hearing was in error. In essence, the WCF asserts Mr. Serrano should have been required to prove the elements of his claim as of the date that the judge issued her second order. But the WCF failed to make this claim below. By remaining silent and waiting for the appeal to raise this issue, the WCF unfairly prejudiced Mr. Serrano. If the WCF had raised this issue below, Mr. Serrano would have been on notice of the potential need to produce more current evidence of his employment status. Avoiding this type of unfair prejudice to an opposing party lies at the heart of our preservation rule. *See Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 23, 163 P.3d 615 (preservation rule prevents parties from obtaining a strategic

advantage by raising an issue for the first time on appeal). We therefore do not address this new issue raised by the WCF.

3. The Third Element: Limited Ability to Perform Basic Work Activities

¶28   Utah Code section 34A-2-413(1)(c)(ii) requires an employee seeking permanent disability benefits to prove that the employee has "an impairment or combination of impairments that limit the employee's ability to do basic work activities." The employee need not prove a complete inability to perform basic work activities, only that the employee's ability to perform these activities is limited. In defining what constitutes basic work activities, we look to identical language used in federal social security law, which defines "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2012). Thus, the disability must limit an employee's ability to perform the work activities of a broad spectrum of jobs available.

¶29  In this case, the labor commission concluded that Mr. Serrano's ability to perform basic work activities was limited because he did not "have a full range of motion with his head and neck and cannot put stress on his neck such that he does not have a reasonable degree of flexibility." The commission's specific findings regarding Mr. Serrano's neck impairments are inadequate to show that his ability to perform most types of jobs was limited. Of course a neck injury could limit an employee's ability to perform physically demanding jobs, including Mr. Serrano's previous line of work. But this element deals with work activities that are so basic that they are required to perform most jobs, including more sedentary lines of work. The commission's findings do not adequately demonstrate that Mr. Serrano's disability negatively affects his ability to perform less physically demanding jobs, such as office work.

¶30  We nevertheless affirm the labor commission's finding that this element was satisfied because it is supported by substantial evidence presented to the commission. Mr. Serrano testified that certain basic activities, like walking, could cause his condition to worsen such that he could do nothing but rest for two or three days. He stated that by the time he quit his job with Provo City he could only work for two hours before he would become too nauseated to continue. He further stated that within an hour of sitting in front of a computer he would experience nausea and back pain and would have to lie down. Finally, Mr. Serrano testified that his injury made it difficult to sleep at night, which interfered with his ability to arrive at work on time. Although Mr. Serrano's testimony is contradicted

in some respects by some of the medical evaluations, it constitutes substantial evidence on which the commission was entitled to rely in finding that his injury limited his ability to perform basic work activities that would be required for most jobs.

4. The Fourth Element: Inability to Perform Former Work

¶31 The labor commission found that Mr. Serrano was qualified to perform several types of employment. He had eleven years of experience as a facility service technician fixing and maintaining public buildings and other facilities. Mr. Serrano also had jobs maintaining a public pool and as a security guard. Finally, as a member of the National Guard, he performed physical labor as well as typing and filing duties.

¶32 Substantial evidence supports the labor commission's finding that Mr. Serrano could no longer perform work that he was previously qualified to perform. His jobs as a facility service technician and swimming pool maintenance technician required him to climb ladders, look up for prolonged periods, place his body in awkward positions in order to fix various systems or machines, and lift heavy objects. Both expert reports and Mr. Serrano's testimony adequately support the conclusion that Mr. Serrano could no longer safely perform these tasks without experiencing debilitating pain. Mr. Serrano also testified that his injury prevented him from performing the duties of a security guard, such as chasing and apprehending trespassers. Additionally, Mr. Serrano presented evidence that he could no longer carry out the clerical tasks he had performed in the National Guard because he could not perform the repetitive neck movements required for data entry and filing. Mr. Serrano further testified that after operating a computer in a seated position for less than an hour, he becomes dizzy and experiences back pain.

5. The Fifth Element: Inability to Perform Other Work Reasonably Available

¶33 At the evidentiary hearing, the WCF's vocational rehabilitation expert testified that several maintenance supervisor positions were available and that Mr. Serrano could perform this type of work. A maintenance supervisor manages other maintenance technicians and performs office work.

¶34 The WCF argues in this appeal that in light of the rehabilitation counselor's testimony, no substantial evidence in the record supports the conclusion that Mr. Serrano could not perform other work reasonably available. We disagree. Even if Mr. Serrano

could have obtained a position that only required office work, as noted above, he presented substantial evidence that his injury prevented him from performing clerical activities. *Supra* ¶ 32.

6. The Sixth Element: Causation

¶35  The WCF does not raise a substantial evidence challenge to the labor commission's finding that the work accident was the medical cause of Mr. Serrano's disabilities. Instead, the WCF asserts the legal argument that because the car accident aggravated a congenital spinal condition, the accident was not the "direct cause" of Mr. Serrano's disabilities. *See* UTAH CODE § 34A-2-413(1)(b)(iii). The WCF contends that where a preexisting condition predisposes an employee to sustain a more severe injury as a result of a work accident, the employee cannot establish a direct causal link to the accident.

¶36 The WCF's argument is clearly wrong. "Just because a person suffers a preexisting condition, he or she is not disqualified from obtaining compensation. Our cases make clear that the aggravation or lighting up of a pre-existing disease by an industrial accident is compensable . . . ." *Allen*, 729 P.2d at 25 (alteration in original) (internal quotation marks omitted). When a condition or exertion at work aggravates an employee's preexisting condition, the employee must establish that the work condition or exertion is the legal cause of any resulting disability. *Id.* at 25–26. But the WCF does not cite our legal causation case law or argue that the car accident was not the legal cause of Mr. Serrano's disabilities. Instead, the WCF argues that a work accident that aggravates a preexisting condition can never be the direct cause of a disability. We reject this argument and uphold the labor commission's finding that Mr. Serrano proved causation.

7. Conclusion

¶37 In challenging the award of permanent total disability payments to Mr. Serrano, the WCF argues, in large part, that the award should be reversed because the evidence supports a conclusion that Mr. Serrano was not totally disabled. But these arguments do not satisfy the substantial evidence standard of review. The fact that the evidence might support a different conclusion is insufficient grounds for reversing an administrative agency's findings of fact. *See Becker*, 2013 UT 51, ¶¶ 21–22. Because the WCF failed to show that no substantial evidence supports the labor commission's findings on the elements of a permanent total disability award, we affirm the decision below.

## II. THE ADMINISTRATIVE LAW JUDGE'S DECISION TO ARRIVE AT A DIFFERENT RESULT AFTER REMAND

¶38 As noted above, the administrative law judge initially denied Mr. Serrano's permanent total disability claim. After the labor commission reversed and remanded the case, the judge considered a new medical panel report along with the evidence presented in the initial proceeding, and came to a different conclusion. The administrative law judge's second order awarded benefits. The WCF argues on appeal that the administrative law judge abused her discretion by arriving at a different outcome after the remand.

¶39 We hold that the administrative law judge did not err. The medical panel's report constituted new evidence that could reasonably lead a different outcome. Moreover, the WCF cites no statute, rule, or legal principle that would prevent an administrative law judge from arriving at a different outcome when the judge is directed to reweigh the evidence on remand. Absent any legal argument as to why the administrative law judge could not change her mind after the remand, we are unable to evaluate the WCF's bald assertion that the judge abused her discretion. *See* UTAH R. APP. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on.")

## III. DELAY IN ISSUING THE ADMINISTRATIVE DECISION

¶40 Mr. Serrano filed his claim for benefits in 2006. The administrative law judge denied his permanent total disability claim in 2007, and he filed a motion for review with the labor commission. The labor commission did not rule on the motion for review until 2010, when it remanded the case back to the administrative law judge for further proceedings. The administrative law judge then issued a second order awarding benefits in 2012 and the labor commission affirmed the award later that year. The WCF appealed to the court of appeals and after the case was fully briefed and oral argument was held in that court, the court of appeals certified the case to this court for further briefing and oral argument before this court.

¶41 The WCF complains about the six-year delay between the filing of Mr. Serrano's claim and the labor commission's final decision affirming the award of benefits. The WCF asserts that it would be prejudiced if it were required to make a lump-sum award for the years in which Mr. Serrano was entitled to benefits but did

not receive them because of the delay in adjudicating his claim. The WCF somewhat sheepishly suggests: "Perhaps this Court can apply the equitable principles recently recognized [in *Employers' Reinsurance Fund v. Labor Commission*, 2012 UT 76, ¶¶ 30–37, 289 P.3d 572] to modify the onset date of benefits."

¶42 We reject this proposal because our holding in *Employers' Reinsurance Fund* does not apply here. In that case, an employee waited thirteen years after he became disabled to file a claim for benefits. *Id.* ¶¶ 34–36. We held that because the *employee's* unreasonable delay prejudiced the Employers' Reinsurance Fund, the employee's benefits would be calculated from the date he first applied for them. *Id.* ¶ 36. In this case, the delayed award of benefits is not attributable to Mr. Serrano, but rather to the administrative system set up to adjudicate his claim. Thus, unlike the claimant in *Employers' Reinsurance Fund*, there is no reason why Mr. Serrano should shoulder the burden for any prejudice caused by the delay.

## CONCLUSION

¶43 We affirm the labor commission's award of permanent total disability benefits to Mr. Serrano.

———————