2009 UT 29

In re OLYMPUS CONSTRUCTION, L.C.,

David C. Matthews, Petitioner,

v.

Olympus Construction, L.C., Respondent.

No. 20070956.

Supreme Court of Utah.

May 19, 2009.

Dwayne A. Vance, Park City, for petitioner.

Steven T. Waterman, Brent D. Wride, Steven C. Strong, Salt Lake City, for respondent.

WILKINS, Justice:

## INTRODUCTION

¶ 1 We granted certiorari on two questions: (1) whether the court of appeals correctly construed and applied relevant provisions of the Utah Revised Limited Liability Company Act in holding that the district court could extend the period for rejecting Petitioner's claim; and (2) whether the court of appeals erred in affirming the district court's award of attorney fees and in imposing additional fees for the appeal. We hold that the district court could extend the period for rejecting Petitioner's claim, but that attorney fees were not properly imposed because Petitioner's claim was not without merit. Accordingly, we affirm in part and reverse in part.

## BACKGROUND

¶ 2 In 1998 Olympus Construction retained Petitioner David C. Matthews, on behalf of Re/Max Brokers, L.C., to assist in the purchase of a piece of property in Summit County, Utah. Olympus paid Matthews a $200 commission when purchase closed that December. Matthews asserts that at that time an agent of Olympus promised an additional $100,000 commission upon the future sale of the property, although the promise was not recorded in writing. The property was sold in 2003 as part of dissolution proceedings for

Olympus, but no additional commission was paid to Matthews or Re/Max. The intervening history is relevant.

¶ 3 In 1999 Matthews and his wife Jane, also a real estate agent, terminated their business relationship with Re/Max and with their supervising principal broker, Fred B. Law. Matthews and his wife formed their own real estate company with Jane as licensed principal broker. Matthews asserts that at that time Mr. Law orally assigned his right to collect the $100,000 commission from Olympus to Jane, who then orally assigned her right to Matthews.

¶ 4 In 2002 Olympus filed for judicial dissolution in the Third District Court, which the court granted. The court redesignated the assigned custodian as a receiver, who later resigned and was replaced with a successor receiver. The court ordered the successor receiver to "wind up the business and affairs of Olympus as provided in Part 13 of the Utah Limited Liability Company Act." In December 2003 the receiver filed to establish a claim bar date and claim-filing procedures, including procedures for providing notice to potential claimants. The court approved the claim filing procedures and set June 30, 2004 as the claim bar date. At this time, the court had not yet approved procedures for resolution of claims.

¶ 5 Matthews filed a notice of claim for the $100,000 real estate commission, in his own name, on June 30, 2004. On October 6, 2004, more than ninety days after Matthews filed his claim, the receiver requested withdrawal of the claim. In November 2004 the receiver filed to establish claim resolution procedures, including an extended claim rejection date. Matthews opposed this motion and requested payment of his claim because the receiver failed to reject his claim within ninety days of receiving it, as provided by Utah Code section 48–2c–1305(4). The district court denied Matthews' motion and in March 2005 set a

new deadline for claim rejections. The receiver then formally rejected Matthews' claim. In the subsequent claim adjudication proceedings, the district court granted the receiver's summary judgment motion, finding that Matthews' claim was barred by the statute of frauds and Utah broker licensing statutes. The district court also awarded attorney fees to Olympus based on the finding that Matthews' claim was without merit and had been pursued in bad faith.

¶ 6 Matthews appealed. The court of appeals affirmed the district court's actions and awarded attorney fees to Olympus on appeal. We then granted certiorari.

## STANDARD OF REVIEW

¶ 7 "We review the court of appeals' interpretation of the relevant statute[s] for correctness, according no deference to its conclusions." *Regal Ins. Co. v. Canal Ins. Co.*, 2004 UT 19, ¶ 5, 93 P.3d 99.

¶ 8 With regard to the award of attorney fees, whether a claim is "without merit" is a question of law we review for correctness.[1] *In re Sonnenreich*, 2004 UT 3, ¶ 45, 86 P.3d 712.

## ANALYSIS

I. THE DISTRICT COURT HAD AUTHORITY TO EXTEND THE DEADLINE FOR REJECTION OF CLAIMS AGAINST OLYMPUS

¶ 9 We first address the issue of whether, under the Utah Revised Limited Liability Company Act,[2] the district court had authority to extend the period for the receiver to reject Matthews' claim.

¶ 10 To interpret a statute, we always look first to the statute's plain language in an effort to give effect to the legislature's intent, to the degree it can be so discerned. *See, e.g., In re Kunz*, 2004 UT 71, ¶ 8, 99 P.3d 793

---

1. Section 78B–5–825 of the Utah Code provides for an award of attorney fees to a prevailing party if the action was both 1) "without merit" and 2) "not brought or asserted in good faith." Utah Code Ann. § 78B–5–825 (2008). Whether a claim was "not brought or asserted in good faith" is a question of fact that we review under a clearly erroneous standard. *In re Sonnenreich*,

2004 UT 3, ¶ 45, 86 P.3d 712. However, we need not reach the second element here because we find Matthews' claim to not be "without merit."

2. Utah Code Ann. §§ 48–2c–101 to –1902 (2002).

("Pursuant to general principles of statutory interpretation, 'we ... look first to the ... plain language,' recognizing that 'our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve.'" (quoting *Evans v. State,* 963 P.2d 177, 184 (Utah 1998) (alteration in original))); *State v. Hunt,* 906 P.2d 311, 312 (Utah 1995) ("The best evidence of the true intent and purpose of the Legislature in enacting the Act is the plain language of the Act." (quotation marks omitted)).

¶ 11 Part 12 of the Act governs dissolution of a limited liability company, and part 13 governs the winding up of a dissolved company. In order to determine the breadth of the district court's authority in the dissolution process, we consider both.

### A.  Part 13 Winding–Up Procedures Are Not Dispositive

¶ 12 Matthews argues that Utah Code section 1305 is dispositive. We disagree. Part 13 governs the winding up of a dissolved limited liability company. Utah Code Ann. §§ 48–2c–1301 to –1309 (2007). Under subsection 1304, a dissolved company is required, if able, to "pay or make reasonable provision to pay all claims and obligations," including those that are "contingent, conditional, or unmatured" and known to the company, and all those that are "known to the company but for which the identity of the claimant is unknown." § 48–2c–1304(1). The Act then provides procedures for disposing of those claims, either by notification, in section 1305, or by publication, in section 1306. Both sections address giving notice to potential claimants and the subsequent deadlines for bringing and addressing claims.

¶ 13 Section 1305 provides procedures for the company to dispose of known claims by providing notification of dissolution to potential claimants. § 48–2c–1305(2). It allows the company to set a date by which claims must be received or they are barred ("claim bar date"). § 48–2c–1305(3)(a). A claim is also barred if, after the company provides written notice of rejection within ninety days of receiving the claim, the claimant does not commence an enforcement proceeding within another ninety days. § 48–2c–1305(3)(b). Thus,

a company may be protected by placing limits on the filing of claims.

¶ 14 On the other hand, the statute also protects claimants. In addition to mandating that notice be given, "[c]laims which are not rejected by the dissolved company in writing within 90 days after receipt of the claim by the dissolved company shall be considered approved." § 48–2c–1305(4). It is under this statutory provision that Matthews argues his claim has been approved. It is undisputed that Olympus failed to reject Matthews' claim within ninety days of receiving it. Accordingly, Matthews' claim would be "considered approved" if Olympus was bound to follow that statutory provision. However, we are not persuaded that Olympus was so bound. The statutory scheme provides some options in the winding-up process.

■ ¶ 15 Section 1305(1) provides, "A dissolved company in winding up *may* dispose of the known claims against it by following the procedures described in this section." (Emphasis added.) Use of the provisions of this section is permissive rather than mandatory. That is, a dissolved company may elect to follow the procedures in this section or it may choose another route.

■ ¶ 16 Even though section 1305 is permissive, however, once a dissolved company has elected to dispose of claims according to its provisions, the company is bound by every provision of the section. The dissolved company reaps the benefit of the claim bar date and procedures but is also bound to reject claims within the specified ninety-day period or lose the right to do so. In essence, it gets the protections but is also bound by the limits.

¶ 17 Section 1305 contemplates a non-judicial dissolution. In contrast, in a judicially supervised dissolution, the court directs the winding-up process, as provided for in part 12. We turn next to a discussion of that section and its effect on the provisions of part 13.

### B.  Part 12 Grants Broad Authority to the District Court in Directing Winding–Up Procedures

¶ 18 Olympus argues that Utah Code sections 48–2c–1210 to –1212, governing judicial-

ly supervised dissolution, grant the district court broad authority to direct the procedures for winding up a dissolved company. We agree.

¶ 19 Part 12 of the Act governs dissolution. Utah Code Ann. §§ 48–2c–1201 to –1214 (2007). It provides for three types of dissolution: voluntary, administrative, and judicial. It also directs that a dissolved company shall wind up its affairs "as provided in Part 13 of this chapter." § 48–2c–1203(1). Accordingly, a voluntarily dissolved company is required to dispose of claims in conformity with either section 1305 or section 1306. Since each section is permissive, the dissolved company may choose either or both.

¶ 20 In an administrative dissolution, the company must similarly follow the provisions of part 13, but is more specifically directed "to give notice to claimants in the manner provided in Sections 48–2c–1305 *and* 48–2c–1306." § 48–2c–1207(3)(a)(i)–(ii) (emphasis added). Thus, administratively dissolved companies may not choose between the two sections but are required to dispose of claims by both notification and publication.

¶ 21 When a company is judicially dissolved, the Act requires the court to direct the winding-up process "in accordance with Part 13." § 48–2c–1213(2). It does not, however, specify the use of 1305 or 1306. Thus, the overseeing court may choose to employ either or both. In addition, the Act gives a court granting a decree of dissolution the authority to appoint a receiver to wind up and liquidate the company's affairs and to "describe the powers and duties of the receiver ... in its appointing order." § 48–2c–1212(1), (3). The Act thereby grants the court broad authority to direct the winding-up process. Thus, the court may choose to adopt sections 1305 and/or 1306 to dispose of claims, but it is not required to do so. It may also fashion a more suitable procedure through the use of a receiver.

¶ 22 Matthews argues that the legislature intended for all dissolved companies to be governed by part 13 of the Act, including sections 1305 and 1306, and that it would be unjust to allow judicially dissolved companies appointing receivers the authority to do otherwise. We agree that part 13 governs every dissolved company. However, when read with part 12, it appears the legislature meant to allow judicially supervised dissolutions more flexibility.

¶ 23 When a company is judicially dissolved under the Act, the overseeing court is not required to adopt the provisions of either, or both, sections 1305 or 1306 to dispose of claims against the company. If the court does adopt either section, it is bound to follow every provision of the adopted section. If it does not, it may fashion its own claim disposition procedures pursuant to the broad authority granted by part 12 of the Act.

### C. The District Court Did Not Adopt Section 1305

¶ 24 As discussed, Olympus was bound to reject Matthews' claim within ninety days of receipt only if the district court adopted section 1305 of the Act for the disposition of known claims. It did not adopt section 1305, as evidenced by the court's actions.

¶ 25 In addition to filing a decree of dissolution, in May 2003 the district court appointed a receiver to carry out the winding-up activities. The court's appointing order provided:

> [T]he Receiver *may* dispose of known and unknown claims against Olympus by notice and/or publication, *may* set dates for the barring of such claims and *may* accept or reject claims all as provided in Utah Code Ann. Sections 48–2c–1305 and 1306. To the extent permitted by law, all claims filed against Olympus *shall* be adjudicated and determined by this Court in and as part of this proceeding.

(Emphasis added.) According to the order, the court allowed the receiver to use the provisions of sections 1305 and 1306 to dispose of claims, but did not require it. Also, the court specifically retained the power to adjudicate and determine all claims. From this language and the following subsequent actions of the court, we hold that the court did not expressly adopt section 1305 but intended to fashion its own procedures.

¶ 26 Pursuant to the authority granted in the appointing order, in February 2004 the receiver moved for, and the court approved, claim filing procedures, including notice and publication procedures, and the court set a claim bar date of June 30, 2004. Matthews argues that by asking for a claim bar date and notice and claim filing procedures, Olympus was electing to follow section 1305 as allowed by the district court. However, in its approval order the court did not address procedures for dealing with timely filed claims. The court also did not provide for a claim rejection deadline, nor for notifying potential claimants of the deadline for responding to a claim rejection. Further, the approved claim notice form provided a claim definition that differed from the definition used in section 1305 by including contingent claims. These differences are inconsistent with adoption of section 1305. Olympus was not electing to follow section 1305, nor was the court adopting use of section 1305 in setting a claim bar date and other claim filing procedures.

¶ 27 Additional actions of the court provide further support for our holding. In May 2004 the court issued an order granting settlement authority to the receiver. Specifically, the receiver was authorized to determine "which [c]laims to pursue for settlement" as opposed to using "other options such as waiting to address such claims until a later date or proceeding to litigate and defend against" the claims. No reference was made to the ninety-day claim rejection deadline set forth in section 1305. In March 2005 the court approved detailed claim resolution procedures, which, among other things, set a claim objection deadline and again stated that all claims were to be resolved by court order.

¶ 28 The district court did not adopt section 1305. Accordingly, Olympus was not bound to reject Matthews' claim within ninety days of receiving the claim, and the dis-

trict court was empowered to set an extended deadline.

## II. ATTORNEY FEES WERE IMPROPERLY AWARDED BECAUSE MATTHEWS' CLAIM WAS NOT WITHOUT MERIT

¶ 29 In reviewing the district court's award of attorney fees, we apply the statutorily mandated, two-pronged test. Section 78B–5–825 of the Utah Code provides that "[i]n civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B–5–825(1) (2008).[3] Accordingly, a finding of both lack of merit and bad faith are required to award attorney fees.

¶ 30 We first look at whether Matthews' claim was without merit. To determine whether a claim is without merit, we look to whether it was " 'frivolous' " or " 'of little weight or importance having no basis in law or fact.' " *Warner v. DMG Color, Inc.*, 2000 UT 102, ¶ 22, 20 P.3d 868 (quoting *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983)).

¶ 31 Matthews argued before the district court that his claim against Olympus should be considered approved under Utah Code section 1305(4), which requires a judicially dissolved company to reject a claim within ninety days of a timely filed notice of claim. Utah Code Ann. § 48–2c–1305(4) (2002). Olympus argued that this provision did not apply because neither Olympus nor the court specifically invoked it. This question is one of first impression, unanswered until now since we had not previously interpreted the statute. Further, because the district court chose to incorporate parts of section 1305 into its claim resolution procedures, it was unclear whether the entire section must then be followed. As such, Matthews' claim was not frivolous, had a basis in law and fact, and therefore was not without merit.[4]

---

3. Utah Code section 78–27–56 was renumbered by the 2008 Legislature as section 78B–5–825. As the language remains the same except for a minor stylistic change, we cite to the most current version.

4. Olympus also argues that Matthews' original claim for a real estate commission was without merit. Because the promise for $100,000 upon sale of the property was not recorded in a signed writing, it clearly violates the statute of frauds. *See* Utah Code Ann. § 25–5–1 (1998). However, even a legally deficient claim, *if not timely reject-*

¶ 32 Because we find Matthews' claim before the district court and on appeal to be not without merit, we reverse the award of attorney fees both at the district court and on appeal.

## CONCLUSION

¶ 33 We conclude that the court of appeals correctly interpreted the Utah Revised Limited Liability Company Act in holding that the district court had authority to set an extended deadline for rejection of claims against Olympus. Although part 13 of the Act applies to all dissolutions, sections 1305 and 1306 are permissive and binding only once adopted. Part 12 of the Act allows the overseeing court in a judicial dissolution the flexibility to fashion its own claim disposition procedures in place of adopting section 1305 or section 1306. In this case, the district court's actions evidenced its intent not to adopt section 1305.

¶ 34 We also conclude that it was improper to award attorney fees against Matthews. Matthews' argument, that Olympus was bound by section 1305 and that failure to reject his claim according to the deadline provided in that section constituted approval of his claim, was an undecided issue of first impression and was grounded in law. It therefore had sufficient merit to avoid sanctions.

¶ 35 Affirmed in part and reversed in part.

¶ 36 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.

_ed_, may form the basis for a meritorious chal-