2014 UT App 196

# THE UTAH COURT OF APPEALS

DAVID PROWS,
Petitioner,

*v.*

LABOR COMMISSION; AUTO-OWNERS INSURANCE COMPANY; AND
ALLEN'S MASONRY, INC.,
Respondents.

Opinion
No. 20130471-CA
Filed August 14, 2014

Original Proceeding in this Court

Daniel F. Bertch and Kevin K. Robson, Attorneys
for Petitioner

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

Bret A. Gardner and Kristy L. Bertelsen, Attorneys
for Respondents Auto-Owners Insurance
Company and Allen's Masonry, Inc.

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES GREGORY K. ORME and JOHN A. PEARCE concurred.

VOROS, Judge:

¶1      David Prows, a brickmason, fell from scaffolding, injuring his head and shoulder. A few years later he filed for disability benefits, claiming a permanent total disability. The Utah Labor Commission denied his claim on the ground that Prows, then gainfully employed, could not establish a permanent total disability. Prows argues that the legal category of permanent total disabilities includes many disabilities that are in fact temporary. In support of this argument he points to various sections of the

Workers' Compensation Act that contemplate permanent total disability payments ending during the life of the recipient. We decline to disturb the Commission's ruling.

BACKGROUND

¶2     A brickmason for over twenty-five years, Prows fell from scaffolding while working for Allen's Masonry in 2007. He landed on his right shoulder, tearing his rotator cuff and injuring his head on a landscaping boulder.

¶3     Prows filed an Application for Hearing with the Commission on November 28, 2011, seeking benefits for his claimed permanent total disability. He attached an Attending Physician's Statement from Dr. John Speed. Speed confirmed Prows's injuries and asserted that Prows's accident rendered him "totally disabled" until "at least 2/1/12."

¶4     On December 19, 2011, a month after Prows claimed a permanent total disability with the Commission, Prows accepted a job from the VA Hospital and began sorting mail for $13.00 per hour plus benefits. Prows did not request, and the hospital did not provide, any special accommodations. After accepting this job, Prows did not withdraw his claim for permanent total disability. Instead, Prows narrowed his claim to the period of December 8, 2008 (the day Allen's Masonry terminated his employment), through December 19, 2011 (the day Prows started work at the hospital).

¶5     An administrative law judge (ALJ) heard Prows's claim. At the start of the hearing, Allen's Masonry moved for summary judgment. Allen's Masonry argued that because Prows was gainfully employed, he did not meet the test for permanent total disability. The ALJ granted Allen's Masonry's motion, reasoning that Prows could not establish a permanent total disability, because he demonstrated the "ability to perform work." Prows asked the Commission to review the ALJ's order. On review, the Commission ruled that Prows's gainful employment precluded a finding of

permanent total disability, even for the period in which he did not work.

ISSUE ON APPEAL

¶6     Prows contends that the Commission erred in ruling as a matter of law that he did not qualify for permanent total disability. "When reviewing an agency's interpretation of law, we review for correctness." *Utah Chapter of the Sierra Club v. Air Quality Bd.*, 2009 UT 76, ¶ 13, 226 P.3d 719 (citation and internal quotation marks omitted).

ANALYSIS

¶7     Prows contends that he established a permanent total disability for the period in which his injury prevented him from working. Prows argues that his benefits for permanent total disability "accrued on at least a weekly basis, from the time he lost his employment with [Allen's Masonry] . . . until his re-employment with the [hospital]." Allen's Masonry, Auto-Owners Insurance Company, and the Commission (collectively, Respondents) respond that Prows cannot qualify for permanent total disability, because he returned to gainful employment before his administrative hearing.

¶8     To establish entitlement to benefits for a permanent total disability under the Workers' Compensation Act, an injured employee must prove by a preponderance of the evidence that she meets certain criteria.[1] Utah Code Ann. § 34A-2-413(1)(c)

---

1. To establish a permanent total disability, the employee must meet the following four requirements:
        (i) the employee is not gainfully employed;
        (ii) the employee has an impairment or combination
        of impairments that limit the employee's ability to do

(continued...)

(LexisNexis 2011). First, the employee must prove that she "is not gainfully employed." *Id.* § 34A-2-413(1)(c)(i). The present dispute centers on this statutory requirement.

¶9     When faced with a question of statutory interpretation, "we always look first to the statute's plain language in an effort to give effect to the legislature's intent, to the degree it can be so discerned." *Matthews v. Olympus Constr., LC* (*In re Olympus Constr., LC*), 2009 UT 29, ¶ 10, 215 P.3d 129. Furthermore, "[w]hen interpreting a statute, we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning." *Hutter v. Dig-It, Inc.*, 2009 UT 69, ¶ 32, 219 P.3d 918. Finally, "[w]hen the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed." *LPI Servs. v. McGee*, 2009 UT 41, ¶ 11, 215 P.3d 135.

¶10     As stated above, to establish a permanent total disability, an employee must prove by a preponderance of the evidence that she

---

1. (...continued)
    basic work activities;
    (iii) the industrial or occupationally caused impairment or combination of impairments prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident or occupational disease that is the basis for the employee's permanent total disability claim; and
    (iv) the employee cannot perform other work reasonably available, taking into consideration the employee's:
        (A) age;
        (B) education;
        (C) past work experience;
        (D) medical capacity; and
        (E) residual functional capacity.
Utah Code Ann. § 34A-2-413(1)(c) (LexisNexis 2011).

"is not gainfully employed." Utah Code Ann. § 34A-2-413(1)(c)(i). Here, while still unemployed, Prows sought benefits for his claimed permanent total disability. A month later, he accepted work from the hospital. Consequently, at the time of the administrative hearing, Prows was "gainfully employed." *Id*. Accordingly, the ALJ ruled that Prows failed to establish a permanent total disability.

¶11    On its face, Prows's argument that a currently employed claimant could be deemed permanently and totally disabled seems self-refuting. But Prows advances several theories as to why we should adopt his counterintuitive reading of the statute. To begin with, he argues that we should read "is not gainfully employed" to mean was "not gainfully employed during the period of the claimed disability." This argument turns on a fine distinction: what the meaning of the word "is" is. In reading a statute, we assume "that the legislature used each term advisedly according to its ordinary and usually accepted meaning." *Hutter*, 2009 UT 69, ¶ 32. Typically, we understand "is" as a present-tense form of the verb "to be." *See Webster's Third New International Dictionary* 1197 (1993). Accordingly, we assume that the legislature used "is" here as a present-tense verb.

¶12    While the legislature might have chosen to say that an employee claiming a permanent total disability must prove that she was not gainfully employed during the period of the claimed disability, "[o]ur task is to interpret the words used by the legislature, not to correct or revise them." *State v. Wallace*, 2006 UT 86, ¶ 9, 150 P.3d 540. The Act does not require an employee to prove that she *was* not gainfully employed at some prior time, but that she "*is* not gainfully employed." Utah Code Ann. § 34A-2-413(1)(c)(i) (emphasis added). Thus, an employee claiming a permanent total disability must at a minimum prove that she is not currently gainfully employed. Consequently, under a plain reading of the statutory text, which we adopt, the Commission correctly determined that Prows did not establish a permanent total disability when he was, at the time of the hearing, gainfully employed.

¶13    But Prows maintains that the obvious reading of subsection 413(1)(c) does not square with other subsections of section 34A-2-413. "Provisions within a statute are interpreted in harmony with other provisions in the same statute." *Berneau v. Martino*, 2009 UT 87, ¶ 12, 223 P.3d 1128 (citation and internal quotation marks omitted). First, Prows points to subsection 413(6)(a). That subsection specifies that benefits for a permanent total disability end when the employee dies or is capable of returning to work:

> (6)(a) The period of benefits commences on the date the employee became permanently totally disabled, as determined by a final order of the commission based on the facts and evidence, and ends:
> > (i) with the death of the employee; or
> > (ii) when the employee is capable of returning to regular, steady work.

Utah Code Ann. § 34A-2-413(6)(a) (LexisNexis 2011). According to Prows, this subsection "is inconsistent with the notion that 'returning to regular, steady work' triggers a complete forfeiture of accrued benefits."

¶14    But subsection 413(6)(a) and subsection 413(1)(c)(i) address two different situations. Subsection 413(1)(c)(i) specifies the result when a gainfully employed claimant seeks benefits based on a claimed permanent total disability. Subsection 413(6)(a), on the other hand, specifies the result when an employee previously awarded benefits based on a permanent total disability later becomes capable of returning to work. *Id*. Despite the previous award, her benefits end. We understand Prows's point that this subsection shows that a permanent total disability may come to an end. But the statute allows this result only after the Commission awards benefits for a permanent total disability, not before. If the disability resolves before an award of benefits, the claimant cannot claim to be permanently disabled. This is Prows's circumstance. He did not become gainfully employed *after* being awarded benefits based on a permanent total disability, but *before*. And the Act states

explicitly that a person who is currently gainfully employed cannot establish a permanent total disability.

¶15    Second, Prows points to subsection 413(5)(e)(ii). That subsection also addresses a post-award change in circumstances. It mandates that, after an award of benefits for permanent total disability, the insurer or employer may submit a plan for re-employment, so long as that plan "include[s] payment of reasonable disability compensation to provide for the employee's subsistence during the rehabilitation process." *Id*. § 34A-2-413(5)(e)(ii). Again, we take Prows's point that the statute recognizes that with rehabilitation an employee may overcome even a disability once adjudicated as "permanent." But here, the Commission never made an initial adjudication of permanent total disability—nor, in the face of his employment, would it have had any reason to believe that Prows's disability was permanent. So this subsection also does not apply.

¶16    Third, Prows points to subsection 413(10). That subsection also addresses a post-award change in circumstances. It provides that "[a]n insurer or self-insured employer may periodically reexamine a permanent total disability claim" under certain enumerated circumstances. *Id*. § 34A-2-413(10)(a). This "[r]eexamination may be conducted no more than once every three years *after an award is final*." *Id*. § 34A-2-413(10)(b) (emphasis added). Here, though, the Commission did not award benefits for a permanent total disability. So this subsection also does not apply.

¶17    Finally, Prows points to subsection 34A-2-423(3). That subsection provides that accrued disability compensation passes to the estate of an injured employee who dies before he receives the compensation. *Id*. § 34A-2-423(3). But for any benefit to accrue, this subsection states that the Commission must find "that the employee is entitled to compensation." *Id.* Here, correctly applying the law, the Commission found that Prows was not entitled to compensation for a permanent total disability, because he was gainfully employed. Thus, this subsection also does not apply.

¶18    Prows also argues that the Commission's ruling runs afoul of *King v. Industrial Commission*, 850 P.2d 1281 (Utah Ct. App. 1993), *abrogated on other grounds by Murray v. Labor Comm'n*, 2013 UT 38, ¶ 28, 308 P.3d 461. *King* also addresses a post-award change in circumstance. It holds that an employee awarded temporary disability benefits does not lose those benefits during periods of incarceration. *Id.* at 1296. According to Prows, *King* supports his argument that "accrued benefits are not 'forfeited' due to subsequent re-employment." But *King* never mentions benefits that have been *accrued.* Indeed, no form of the word *accrue* even appears in *King*. Rather, the opinion speaks of benefits that have been *awarded*. "Once awarded," the opinion states, benefits for a temporary total disability continue until the employee's condition has stabilized. *Id.* at 1292. *King* does not address the question here: whether a currently employed claimant may be awarded benefits for permanent total disability.

¶19    Prows also argues that his employment at the VA Hospital does not constitute "reasonably available" employment under the Commission's regulations and thus should not disqualify him from a finding of permanent total disability. Aside from requiring a claimant to prove that he "is not gainfully employed," the Act requires a claimant to prove that he cannot perform "other work reasonably available." Utah Code Ann. § 34A-2-413(1)(c)(iv) (LexisNexis 2011). Because Prows does not meet the first requirement for a finding of permanent total disability—that he is not gainfully employed—we need not also analyze whether he meets the fourth requirement—that he cannot perform other work reasonably available. Moreover, Prows provides no evidence that his employment at the hospital does not constitute "reasonably available" employment.

¶20    Finally, Prows relies on a policy argument: that the Commission erred because, under its decision, an "employee would be smart to never go back to work until after the case in the Labor Commission has gone to final hearing." Prows's point seems to be that our reading of the statute will encourage malingering. If so, we cannot see how adjudicating currently employed claimants as permanently and totally disabled would solve the problem. The

statute mandates that an employee claiming a permanent total disability must "prove by a preponderance of the evidence" that she cannot do "the essential functions of the work activities for which the employee has been qualified" and that she "cannot perform other work reasonably available." *Id*. § 34A-2-413(1)(c). This requirement strikes us as a direct and sensible response to the problem of malingering. More to the point, it is the response the legislature has chosen.

¶21 Additionally, the Act does provide benefits for employees, like Prows, who suffer temporary total disabilities. *Id*. § 34A-2-410. In fact, Prows received benefits for his temporary total disability until doctors agreed he had reached maximum medical improvement. After Prows reached maximum medical improvement, he received benefits for a permanent partial disability.

CONCLUSION

¶22 We decline to set aside the Commission's ruling.

_____