**2015 UT App 225**

# THE UTAH COURT OF APPEALS

MARK L. OLIVER,
Petitioner,
*v.*
LABOR COMMISSION, WORKERS' COMPENSATION FUND,
AND D. TYREE BULLOCH CONSTRUCTION,
Respondents.

Memorandum Decision
No. 20140624-CA
Filed September 3, 2015

Original Proceeding in this Court

Virginius Dabney and Timothy P. Daniels, Attorneys
for Petitioner

Floyd W. Holm, Attorney for Respondents Workers'
Compensation Fund and D. Tyree
Bulloch Construction

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGE GREGORY K. ORME concurred. JUDGE JOHN A.
PEARCE concurred in the result.

TOOMEY, Judge:

¶1     Mark L. Oliver seeks judicial review of the Utah Labor
Commission's denial of permanent total disability benefits
relating to an industrial accident. Because the Commission erred
in its determination that Oliver's work-related injuries do not
limit his ability to do basic work activities and do not prevent
him from performing the essential functions of the job he was
qualified for at the time of his accident, we set aside its order and

allow the Administrative Law Judge's order, granting benefits to Oliver, to stand.

¶2    In March 2000, while working for D. Tyree Bulloch Construction (Bulloch) as a construction supervisor, Oliver fell eight to ten feet onto a concrete floor and injured his pelvis, lower back, and left leg. Until the accident, Oliver mostly specialized in concrete work and other hands-on heavy construction tasks for which he was required to use ladders, work long shifts, kneel for hours at a time, lift fifty pounds, and push wheelbarrows full of concrete. He also worked in landscaping. In 2007, after the accident, Oliver worked briefly as a food delivery truck driver. Because of pain and medical problems caused by the work-related accident, he quit the delivery-truck-driving job and has not been gainfully employed since.

¶3    Oliver was awarded Social Security Disability benefits, and he also applied for permanent total disability benefits under the Utah Workers' Compensation Act. To establish entitlement to permanent total disability benefits, an employee must demonstrate by a preponderance of the evidence that "(i) the employee sustained a significant impairment or combination of impairments as a result of the industrial accident . . . ; (ii) the employee has a permanent, total disability; and (iii) the industrial accident . . . is the direct cause of the employee's permanent total disability." Utah Code Ann. § 34A-2-413(1)(b) (LexisNexis 2011). Further, to establish the existence of a permanent total disability under subsection 34A-2-413(1)(b)(ii), the employee must prove, among other things, that

> (ii) the employee has an impairment or combination of impairments that limit the employee's ability to do basic work activities; [and]

(iii) the industrial or occupationally caused impairment or combination of impairments prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident . . . that is the basis for the employee's permanent total disability claim . . . .

*Id.* § 34A-2-413(1)(c).

¶4 In connection with Oliver's workers' compensation claim, the parties stipulated that he sustained his "injuries by accident arising out of and in the course of employment" at Bulloch; that he has a "42% whole person permanent partial impairment . . . representing significant impairment in function"; and that he has not worked "meaningfully in any line of substantial, gainful employment since July 6, 2007."

¶5 An Administrative Law Judge (the ALJ) referred the medical aspects of Oliver's claim to an impartial medical panel to help determine whether he has a permanent total disability. After reviewing Oliver's medical records and evaluating him, the medical panel concluded that the work-related accident caused his pelvic, lower-back, and left-leg problems and then outlined the parameters of his abilities. Generally, the panel determined that Oliver "may function at a medium duty job," and "may participate in basic work activities," but may have limitations in his functional capacity. In particular, the panel opined that Oliver "may require . . . unscheduled breaks throughout the work day" and "may not be able to stand continuously more than [sixty] minutes and would require [five to ten minutes] of elevation of his legs for each [sixty minutes] of dependant [sic] (standing) use of the legs."

¶6 The ALJ ultimately approved Oliver's claim, finding that "the medical evidence as a whole supports a finding for continued treatment of Mr. Oliver's left leg pain and swelling."

In her analysis, the ALJ noted that "[n]o one medical opinion was compelling. . . . The medical opinions varied regarding strength impairments . . . [but t]he medical evidence is consistent that he needs to elevate his legs and that his ability to sit and stand without leg elevation is substantially impaired." The ALJ found that the medical evidence showed Oliver "is limited in his ability to do basic work activity" under Utah Code subsection 34A-2-413(1)(c)(ii), noting that he "need not show he is incapable of doing basic work activity only that he is limited in his ability to do basic work activity." The ALJ also concluded, under subsection 34A-2-413(1)(c)(iii), that Oliver's impairments prevented him from performing the heavy-duty labor required for his previous construction work and the medium- to heavy-duty labor as a delivery truck driver. She found that Oliver's need to elevate his leg would require special accommodations that are not feasible in a construction setting or while driving a delivery truck.

¶7     Bulloch and the Workers' Compensation Fund (WCF) moved for review of the ALJ's decision. Giving no deference to the ALJ's findings, the Commission reversed the award of permanent total disability compensation and denied Oliver's claim for benefits. Although it acknowledged that the record shows his "conditions preclude Mr. Oliver from performing the heavy labor he has done for most of his adult life," the Commission concluded Oliver failed to demonstrate that his impairments limited his ability to do basic work activities or prevent him from performing the essential functions of his briefly held job as a delivery truck driver.

¶8     On judicial review of the Commission's decision, Oliver argues the Commission applied incorrect legal standards when it concluded he had not met his burden to establish the existence of a permanent total disability and the Commission's determinations are not supported by the evidence in the record. We review the Commission's application and interpretation of the law for correctness, *Prows v. Labor Comm'n*, 2014 UT App 196,

¶ 6, 333 P.3d 1261, but we will not disturb its factual findings unless Oliver demonstrates that a finding is not supported by substantial evidence based on the record as a whole, *see Murray v. Labor Comm'n*, 2013 UT 38, ¶ 19, 308 P.3d 461. *See also* Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2011) (permitting an appellate court to grant relief if an agency's finding of fact "is not supported by substantial evidence"). "[W]hen the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed." *Prows*, 2014 UT App 196, ¶ 9 (citation and internal quotation marks omitted). Then, "[a]n administrative law decision meets the substantial evidence test when a reasonable mind might accept as adequate the evidence supporting the decision." *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 35, 164 P.3d 384 (citation and internal quotation marks omitted).

*Limit on Basic Work Activities*

¶9     Oliver contends the Commission erred in concluding his impairment did not limit his ability to perform basic work activities. He argues the Commission erroneously interpreted the word "limit" and that this interpretation led it to err by concluding that his impairments do not limit his ability to perform basic work activities.[1] Relying on a well-known dictionary, he suggests the statute's plain language merely requires him to "show that his impairments 'reduced in quantity or extent' his ability to perform basic work activities." Bulloch

---

1. Although Oliver frames this argument as the Commission's erroneous interpretation of the word "limit," based on the substance of his argument we read it as a more general challenge to the Commission's interpretation of the statute.

and WCF argue Oliver's interpretation would render the statute meaningless because "everyone would meet [his] criterion."[2]

¶10    Section 34A-2-413 requires Oliver to demonstrate that his work-related injuries "limit [his] ability to do basic work activities." Utah Code Ann. § 34A-2-413(1)(c)(ii) (LexisNexis 2011). "In defining what constitutes basic work activities, we look to identical language used in federal social security law, which defines 'basic work activities' as 'the abilities and aptitudes necessary to do most jobs.'" *Provo City v. Labor Comm'n*, 2015 UT 32, ¶ 28, 345 P.3d 1242 (quoting 20 C.F.R. § 404.1521(b) (2012)). Examples include walking, standing, sitting, coping with changes in work settings, and carrying out instructions. *See* 20 C.F.R. § 404.1521(b). Based on the plain language of the statute, to satisfy the element, "[t]he employee need not prove a complete inability to perform basic work activities, only that the employee's ability to perform these activities is limited." *Provo City*, 2015 UT 32, ¶ 28.

¶11    In the order reversing the ALJ, the Commission acknowledged Oliver's physical limitations but determined he

---

2. Bulloch and WCF also briefly assert that Oliver has failed to marshal the evidence that supports his arguments. "The supreme court explained that marshaling remains an important part of successfully challenging factual findings on appeal because 'a party challenging a factual finding or sufficiency of the evidence to support a verdict will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal.'" *Tobler v. Tobler*, 2014 UT App 239, ¶ 14, 337 P.3d 296 (quoting *State v. Nielsen*, 2014 UT 10, ¶ 42, 326 P.3d 645). "But the supreme court also instructed appellees and appellate courts alike to address the merits of an appellant's arguments without relying on marshaling as a 'stand-alone basis' for rejecting claims on appeal." *Id.* (quoting *Nielsen*, 2014 UT 10, ¶ 44). Accordingly, we address the merits of Oliver's arguments.

did not satisfy this element because "[a]lthough the panel . . . described that Mr. Oliver may require unscheduled breaks and [he] may be absent from work occasionally, such indefinite circumstances do not present a *reasonable* limitation on Mr. Oliver's ability to do basic work activities in light of the panel's description that he may work, remain at work, and cope with changes at work."[3] (Emphasis added.) But the Workers'

---

3. According to the Commission, the basic-work-activities analysis requires it to consider whether Oliver has a "reasonable degree of flexibility, strength, endurance, mental capacity[,] and ability to communicate." By utilizing these factors in its analysis, it appears the Commission's interpretation of subsection 34A-2-413(1)(c)(ii) conflates what is required by the plain language of Utah's Workers' Compensation Act with the analysis required to evaluate residual functional capacity in social security claims. *Compare* Utah Code Ann. § 34A-2-413(1)(c)(ii) (LexisNexis 2011), *with* 20 C.F.R. § 404.1520 (2015). Unlike Utah's Workers' Compensation Act, which requires the claimant to show that a disability limits his or her ability to perform basic work activities, Utah Code Ann. § 34A-2-413(1)(c)(ii), social security regulations require the evaluator to conduct an administrative residual functional capacity assessment to consider the claimant's abilities to perform work activities despite the claimant's limitations, *see* 20 C.F.R. § 404.1520. This assessment requires evaluation of both the claimant's non-exertional and exertional limitations, such as limitations in flexibility, strength, endurance, mental capacity, and ability to communicate. *See id.* §§ 404.1520, 404.1545, 404.1569a. But subsection 34A-2-413(1)(c)(ii) does not direct the Commission to consider the claimant's residual functional capacity. Indeed, the Act permits consideration of the claimant's residual functional capacity only under subsection 34A-2-413(1)(c)(iv) when determining whether the claimant can perform other work reasonably available.

Compensation Act does not direct the Commission to determine whether the claimant has reasonable levels of functionality or a reasonable ability to perform basic work activities. *See* Utah Code Ann. § 34A-2-413(1)(c)(ii). Rather, it requires the Commission to consider whether a claimant's "ability to perform these activities is limited." *Provo City*, 2015 UT 32, ¶ 28. Thus, evaluating whether a claimant retains a reasonable degree of physical and mental functionality notwithstanding a disability has no place in this analysis because the basic-work-activities analysis begins and ends with evaluating whether the claimant's disability "negatively affects" the ability to perform the basic work activities commonly required in employment. *Id*. ¶¶ 28–29. The Commission's use of the qualifying term "reasonable" imposes a higher burden on Oliver than the statute dictates; it requires him to demonstrate a limitation and then show it is reasonable. Accordingly, we conclude the Commission incorrectly construed the governing legal standard.

¶12 Applying the correct legal standard, we conclude the Commission's decision is not supported by substantial evidence. Bulloch and WCF assert the evidence demonstrating Oliver is able to perform basic work activities supports the Commission's conclusion that he is not limited in his ability to do those activities. Specifically, they point to the medical panel's conclusion that Oliver can perform medium-duty work and "may participate in basic work activities." But they also acknowledge the medical panel subsequently determined that Oliver's ability to do those activities may be limited.[4]

---

4. Notably, the Commission found "the medical panel's conclusions regarding Mr. Oliver's restrictions and capacity to work to be persuasive," but discredited its opinion of Oliver's possible limitations as being too indefinite, and suggested his need to "elevate his legs for 5-10 minutes for every hour he is required to stand" could be satisfied during his personal breaks,

(continued…)

¶13 A fair reading of the record as a whole establishes that Oliver was likely capable of performing basic work activities. Some evidence even demonstrates he was capable of performing strenuous activities, such as yard work, staining a deck, and removing a fallen tree. But no evidence indicated he may perform those activities without some limitation. Most of the medical evaluators agreed that Oliver was limited to medium-duty work "with considerations for the venous obstruction problems." And all evaluators suggested that his ability to stand or walk was restricted in one way or another because of the phlebotic syndrome, which causes discomfort and requires frequent elevation of his leg. Even Oliver's most critical evaluator, who concluded that he was capable of just about any activity, suggested Oliver's pain would limit him to sedentary or light-duty activities. Any opinion that Oliver may be capable of performing basic work activities is countered with evidence to the contrary and is markedly outweighed by evidence that suggests his ability to perform such activities would be limited. Thus, we conclude that no reasonable mind would accept as adequate the evidence supporting the Commission's decision on this element. Accordingly, because it is not supported by

---

(…continued)

lunch breaks, or after work. Nevertheless, the Commission did not give the panel's assessment that Oliver "*may* require the need for unscheduled breaks throughout the work day . . . [and] *may* be absent from work because of left leg swelling and pain on an occasional basis" the same treatment as the panel's determination that Oliver "*may* participate in basic work activities." (Emphases added.) Instead, where the Commission expressly "read[] the panel's opinion on this issue to mean that Mr. Oliver *is* capable of" performing basic work activities, it interpreted the panel's assessment that Oliver *may* have limitations in his ability to work as a remote possibility. (Emphasis added.)

substantial evidence, we set aside the Commission's determination that Oliver's impairments did not limit his ability to perform basic work activities.

*Essential Functions of a Job For Which an Employee Is Qualified*

¶14    Oliver next argues the Commission erred in concluding he could perform the essential function of the work activities for which he was qualified until the time of the accident. He argues the evidence does not support the Commission's determination, and in his reply brief, contends the Commission may only consider work he "actually performed prior to the accident." Bulloch and WCF's position is that substantial evidence supports the finding that Oliver is able to perform the essential functions of his work as a delivery truck driver.

¶15    Section 34A-2-413 requires Oliver to show that his impairments prevent him "from performing the essential functions of the work activities for which [he] has been qualified until the time of the industrial accident." Utah Code Ann. § 34A-2-413(1)(c)(iii) (LexisNexis 2011). In the order reversing the ALJ, the Commission "conclude[d] Mr. Oliver has not shown that his work-related condition prevents him from performing the essential functions of the delivery driver position for which he was qualified at the time of the accident." It explained that although Oliver never worked as a driver before the accident, he was qualified to do that type of work because he obtained that position based on the qualifications he had at the time of the accident.

¶16    The operative term in the statute is "qualified," which is not expressly defined. We interpret statutes according to the plain meaning of their text—the meaning the words "would have to a reasonable person familiar with the usage and context of the language in question." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465. This principle is difficult to apply when the plain meaning of the contested language has more than one

conceivable construction. *Id.* Accordingly, "[t]he starting point for discerning such meaning is the dictionary" because it "catalog[s] a range of possible meanings that a statutory term may bear." *Hi-Country Prop. Rights Group v. Emmer*, 2013 UT 33, ¶ 19, 304 P.3d 851.

¶17 A "qualified" person is "competent or eligible," *The American Heritage Dictionary* 685 (4th ed. 2001), has "complied with the specific requirements or precedent conditions," *Webster's Third New Int'l Dictionary* 1858 (1966), or possesses the qualities necessary for a position, *Black's Law Dictionary* 1360 (9th ed. 2009). These definitions suggest that being qualified requires something more than a mere ability to perform in a particular position. Rather, being qualified for a position requires a certain level of training, experience, competence, ability, and validation which includes the physical and mental skills required to perform the work. In other words, although ability is necessary, it is not sufficient to constitute being qualified to do a job.

¶18 Under the appropriate legal standard, it is unclear from the record that Oliver was qualified to perform the essential functions of a delivery truck driver at the time of the accident. Oliver got the job as a delivery truck driver only after he became unable to work in construction, approximately seven years after the accident. In making its decision, the Commission relied exclusively on the parties' stipulation that Oliver got the job as a delivery truck driver based on the "qualifications" he had at the time of the accident. But looking at the record as a whole, aside from the mere ability to drive a truck, it is not clear that Oliver was qualified to drive a delivery truck or obtain employment as a truck driver.

¶19 Reviewing courts have sometimes approved the Commission's evaluation of an applicant's ability to perform the essential functions of work activities based upon an applicant's ability to perform work that differed from the work being done at the time of sustaining the work-related injury. For example, in

*Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, the Utah Supreme Court upheld the Commission's consideration of Martinez's ability to perform the essential functions of a job he was not performing at the time of the industrial accident giving rise to his permanent total disability claim. 2007 UT 42, ¶ 15, 164 P.3d 384. Although Martinez was injured while working as a movie extra, *id.* ¶ 3, the court upheld the Commission's decision to use Martinez's concurrent work at a fast-food restaurant as the benchmark for analyzing whether he could perform the functions of the work activities for which he was qualified at the time of his injuries. *Id.* ¶¶ 5, 13–15. So, although Martinez was not working at the fast-food restaurant at the time of the accident, his employment demonstrated he had the training, competency, and physical ability required to perform as a fast-food-restaurant employee.

¶20  In contrast, Oliver was never employed as a delivery truck driver before the accident. Rather, according to the record, Oliver had mostly performed physically demanding jobs. For instance, the Commission noted that Oliver worked at heavy-duty jobs for "most of his adult life" and even "had to perform heavy labor while supervising and instructing others" as a superintendent. But, although delivery truck drivers have a physically demanding job, which often requires lifting and moving heavy objects, the position requires more than that. *See* Bureau of Labor Statistics, *Delivery Truck Drivers and Driver/Sales Workers*, Occupational Outlook Handbook, 2014–15 Edition (Jan. 8, 2014), http://www.bls.gov/ooh/transportation-and-material-moving/delivery-truck-drivers-and-driver-sales-workers.htm. A light-delivery-truck-driver position requires on-the-job training with an ability to navigate and operate the truck safely on crowded streets; an understanding of routing systems or maps; a knowledge of the products offered by the employer; an ability to operate the company equipment, such as hand-held computers; and an ability to effectively interact with customers. *See id.* Accordingly, although Oliver was arguably able to perform the

essential functions of a delivery truck driver, it is not clear he was qualified to work in that position.

¶21 Because the Commission did not analyze Oliver's claim based on his actual qualifications at the time of the accident, we conclude the Commission's determination was based on incorrect legal standards. Furthermore, in light of the record as a whole, nothing in the record suggests his qualifications as a landscaper or construction worker provided him with the training or experience necessary for the delivery-truck-driver position. Accordingly, we conclude that the Commission erred in determining that Oliver "has not shown that his work-related condition prevent[ed] him from performing the essential functions of the delivery driver position for which he was qualified at the time of the accident."

¶22 When reviewing formal adjudicative proceedings, appellate courts "may award damages or compensation only to the extent expressly authorized by statute." *See* Utah Code Ann. § 63G-4-404 (LexisNexis 2011). In granting relief, Utah Code section 63G-4-404(1)(b) authorizes this court to "order agency action"; "order the agency to exercise its discretion as required by law"; "set aside," "modify," "enjoin[,] or stay" agency action; or "remand the matter to the agency for further proceedings." *Id.* § 63G-4-404(1)(b)(i)–(v). Oliver asks this court to "reverse the Commissioner['s decision] and reinstate the Administrative Law Judge's Order." But Bulloch and WCF have simply asked us to affirm the Commission's order. Neither party seeks a more specific relief. Because we conclude the Commission's determinations were based on incorrect legal standards and were not supported by the record as a whole, we set aside its order denying Oliver benefits, and we allow the ALJ's order to stand.

———————