**2015 UT App 310**

## THE UTAH COURT OF APPEALS

SOCORRO GUZMAN,
Petitioner,

*v.*

LABOR COMMISSION, CIRCLE FOUR FARMS, AND INDEMNITY
INSURANCE COMPANY OF NORTH AMERICA,
Respondents.

Memorandum Decision
No. 20140662-CA
Filed December 31, 2015

Original Proceeding in this Court

Loren M. Lambert, Attorney for Petitioner

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

Eric K. Jenkins and Kristen C. Kiburtz, Attorneys for
Respondents Circle Four Farms and Indemnity
Insurance Company of North America

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGE JAMES Z. DAVIS concurred.[1] JUDGE JOHN A. PEARCE
concurred in the result.[2]

---

1. Judge James Z. Davis began his work on this case as a member of the Utah Court of Appeals. He retired from the court on November 16, 2015, but thereafter became a Senior Judge. He completed his work on the case, sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin 11-201(6).

2. Judge John A. Pearce participated in this case as a member of the Utah Court of Appeals. He became a member of the Utah Supreme Court on December 17, 2015, before this decision issued.

TOOMEY, Judge:

¶1   Socorro Guzman seeks judicial review of the Utah Labor Commission's Appeals Board's (the Board) denial of permanent total disability benefits. Because the Board erred in determining that Guzman's impairments do not limit his ability to do basic work activities, we set aside its order and remand for further proceedings consistent with this decision.

BACKGROUND

¶2   In 2008, while working for Circle Four Farms, Guzman was "forcefully butted" by a three- to four-hundred-pound boar. He was thrown and landed on the cement floor of the pen, injuring his lower back and right hip. Although Guzman continued to work after the accident, his low-back pain worsened and he ultimately stopped working in July 2009. He has not been gainfully employed since.

¶3   In 2011, Guzman applied for permanent total disability benefits under Utah's Workers' Compensation Act. To establish entitlement to these benefits, an employee must demonstrate, by a preponderance of the evidence, that "(i) the employee sustained a significant impairment or combination of impairments as a result of the industrial accident . . . ; (ii) the employee has a permanent, total disability; and (iii) the industrial accident . . . is the direct cause of the employee's permanent total disability." Utah Code Ann. § 34A-2-413(1)(b) (LexisNexis 2011). Further, to establish the existence of a permanent total disability under subsection 34A-2-413(1)(b)(ii), the employee must also prove, among other things, that

> (ii)   the employee has an impairment or combination of impairments that limit the employee's ability to do basic work activities . . .
> [and]

(iv)   the employee cannot perform other work reasonably available . . . .

*Id.* § 34A-2-413(1)(c).

¶4   Guzman sought evaluation of and treatment for his low-back pain. In support of his application for benefits, he included medical records, physical therapy notes, and a vocational assessment from Dr. Dina Galli, a certified rehabilitation counselor. As the Board indicated, one doctor determined that, because of his impairments, Guzman would be "'unable to go back to work.'" Another doctor later determined that he could return to work but not without modification to his job duties. Furthermore, Dr. Galli opined that Guzman is no longer capable of working in his past jobs, has no transferable skills, and is not likely to be able to perform other work reasonably available because of his age, limited education, and limited ability to communicate in English.

¶5   In adjudicating Guzman's claim, an Administrative Law Judge (ALJ) referred the medical aspects of the case to an independent medical panel. In response, the panel briefly[3] answered the ALJ's three specific questions. In particular, it determined that "the principle condition caused by the industrial accident . . . is a herniated disc." It noted that there was medical evidence that other impairments had a bearing on Guzman's overall functional capacity, including "chronic cervical pain, bilateral shoulder pain, and generalized deconditioning." The panel then set forth some restrictions related to his condition. Specifically, it determined that Guzman could not lift more than forty pounds on an occasional basis;

---

3. The substantive portion of the panel's report is three paragraphs long, two of which are single-sentence responses to the ALJ's questions.

could not lift more than twenty to thirty pounds frequently; and could not repetitively bend, stoop, or squat. It also determined he was limited in his ability to perform overhead work or forceful work with his arms above the level of his shoulders or away from his body. Finally, in response to the ALJ's question about whether Guzman was able to work eight-hour days for forty hours per week, the panel answered, "Guzman is capable of working the aforesaid hours each day/week in a light to medium work capacity."

¶6    Although the ALJ approved Guzman's claim for permanent total disability benefits, the Board reversed that decision. In analyzing whether Guzman met his burden to demonstrate permanent total disability, the Board concluded that, although his impairments prevent him from performing the essential functions of the work activities for which he has been qualified, *see* Utah Code Ann. § 34A-2-413(1)(c)(iii), his impairments do not limit his ability to do basic work activities, *id.* § 34A-2-413(1)(c)(ii). Based in part on that conclusion, the Board went beyond the findings in the medical panel's report and also determined that Guzman's impairments do not prevent him from performing other work reasonably available.[4] *Id.* § 34A-2-413(1)(c)(iv).

ANALYSIS

¶7    On judicial review of the Board's decision, Guzman argues the Board applied incorrect legal standards when it concluded he had not met his burden to establish the existence of a permanent total disability. He also argues the Board's

___

4. The Board's order stated, "[t]he medical panel's conclusion that Mr. Guzman can still work full time in a light to medium work setting also indicates that he can work in a variety of employment settings."

determinations are not supported by the evidence in the record. We review the Board's application and interpretation of the law for correctness, *Prows v. Labor Comm'n*, 2014 UT App 196, ¶ 6, 333 P.3d 1261, but we will not disturb its factual findings unless the petitioner demonstrates that a finding is not supported by substantial evidence based on the record as a whole, *see Murray v. Labor Comm'n*, 2013 UT 38, ¶ 19, 308 P.3d 461. *See also* Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2014) (requiring an appellate court to grant relief in an appeal of agency action if an agency's finding of fact "is not supported by substantial evidence"). "An administrative law decision meets the substantial evidence test when a reasonable mind might accept as adequate the evidence supporting the decision." *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 35, 164 P.3d 384 (citation and internal quotation marks omitted).

¶8     As a threshold matter, the respondents contend that because Guzman did not provide a transcript of the evidentiary hearing held before the ALJ, the record is inadequate and this court therefore "cannot properly review the evidence below." We disagree. Although we recognize that failure to include the transcript of the hearing puts Guzman at a tactical disadvantage because he cannot adequately challenge all of the factual findings, there is enough evidence in the record to decide the major issues in this case. *Cf. State v. Nielsen*, 2014 UT 10, ¶¶ 42–44, 326 P.3d 645 (reiterating that the appellate court's focus should be on the merits of a case, even considering some arguable deficiency in the appellant's duty of marshaling). Indeed, to the extent that Guzman challenges the Board's factual findings, he has provided the pertinent medical records, the ALJ's and the Board's orders, the medical panel's report, and his vocational assessment. Accordingly, considering the record as a whole, we review Guzman's arguments.

¶9       Guzman first contends the Board erred in concluding his impairments do not limit his ability to perform basic work activities. Specifically, he argues that "while [his impairments] do not prove a complete inability to perform basic work activities, they do demonstrate, as a matter of law, that [his] ability to perform these activities is limited." (Internal quotation marks omitted.)

¶10      Section 34A-2-413 requires Guzman to demonstrate that his work-related injuries "limit [his] ability to do basic work activities." Utah Code Ann. § 34A-2-413(1)(c)(ii) (LexisNexis 2011). Based on the plain language of the statute, to satisfy this element, "[t]he employee need not prove a complete inability to perform basic work activities, only that the employee's ability to perform these activities is limited." *Provo City v. Labor Comm'n*, 2015 UT 32, ¶ 28, 345 P.3d 1242.

¶11      After pointing out that the medical evidence outlines a "clear set" of restrictions caused by Guzman's impairments, the Board concluded that he retains a "*reasonable* amount of strength, flexibility and endurance" and that his "impairments do not *reasonably* limit his ability to work in a broad range of jobs." (Emphasis added.) But, as we recently discussed in *Oliver v. Labor Commission*,

> [T]he Workers' Compensation Act does not direct the [Board] to determine whether the claimant has reasonable levels of functionality or a reasonable ability to perform basic work activities. Rather, it requires the [Board] to consider whether a claimant's ability to perform these activities is limited. Thus, evaluating whether a claimant retains a reasonable degree of physical and mental functionality notwithstanding a disability has no place in this analysis because the basic-work-activities analysis begins and ends with evaluating

whether the claimant's disability negatively affects the ability to perform the basic work activities commonly required in employment.

2015 UT App 225, ¶ 11, 359 P.3d 684 (citations and internal quotation marks omitted), *petition for cert. filed*, Oct. 27, 2015 (No. 20150889); *accord Quast v. Labor Comm'n*, 2015 UT App 267, ¶¶ 7–8. By applying the qualifying term "reasonably" or "reasonable" in evaluating Guzman's limitations, the Board improperly imposed a higher burden on Guzman than the statute dictates; "it requires him to demonstrate a limitation and then show it is reasonable." *Oliver*, 2015 UT App 225, ¶ 11. We therefore conclude the Board incorrectly applied the governing legal standard.

¶12    Next, Guzman contends the Board misapplied the law concerning the functions a medical panel may perform. In particular, he argues the Board inappropriately allowed the medical panel to make findings regarding the vocational issue— whether Guzman can perform other work reasonably available.

¶13    Section 34A-2-413 requires Guzman to demonstrate that he "cannot perform other work reasonably available, taking into consideration [his]: (A) age; (B) education; (C) past work experience; (D) medical capacity; and (E) residual functional capacity." Utah Code Ann. § 34A-2-413(1)(c)(iv). "A determination of what constitutes other work reasonably available necessarily requires the [Board] to consider various factors, which the [Board] categorizes in two ways: (1) the personal, physical characteristics of the injured employee, and (2) the prospective job market." *LPI Servs. v. Labor Comm'n*, 2007 UT App 375, ¶ 17, 173 P.3d 858, *aff'd sub nom. LPI Servs. v. McGee*, 2009 UT 41, 215 P.3d 135.

¶14    In its order, the Board recognized that Guzman's "age and limited education appear to be factors against his ability to perform other work" and that he is unlikely to be able to

perform the "heavy agricultural work" he has performed for most of his life. But based on the medical panel's three-paragraph report, which did not even address whether Guzman is able to perform other work reasonably available, the Board found that Guzman maintained "sufficient medical and functional capacity" to perform such work.

¶15    The Board may rely on the medical panel's opinion for only those matters that are within the medical panel's expertise—medical diagnosis and restrictions. *See Jensen v. United States Fuel Co.*, 424 P.2d 440, 442 (Utah 1967) (explaining that a medical panel's "proper purpose is limited to medical examination and diagnosis"—those matters particularly within the scope of its expertise); *see also* Utah Code Ann. § 34A-2-601(1)(a) (LexisNexis 2011) (providing that the Board may only refer "the medical aspects of a case" to a medical panel appointed by an administrative law judge); Utah Admin. Code R602-2-2(A) (explaining that a medical panel will be utilized "where one or more significant medical issues may be involved"). But "[i]t is the province of the Board, as the finder of fact, to view all the evidence submitted as a whole and then make an appropriate determination." *Johnston v. Labor Comm'n*, 2013 UT App 179, ¶ 24, 307 P.3d 615.

¶16    Instead, the Board here relied upon the medical panel's determination that Guzman can work full time in a light to medium work capacity as a basis for determining that "he can work in a variety of employment settings." It opined that the panel's three-paragraph "report is more convincing than the other various physician notes."

¶17    We are also troubled by the Board's failure to give Guzman's six-page vocational assessment "much weight in light of the fact that Ms. Galli did not testify at the hearing where she could explain her conclusions and be questioned." This flawed reasoning implies that evidentiary reports only carry value if the

author of those reports can be questioned. But, under this logic, the medical panel's report—from which the Board based most of its findings—would also carry little weight because there is no indication that the panel members were questioned at the hearing.

¶18 Furthermore, the Board's functional capacity analysis is riddled with inconsistencies that call its findings into question. For example, based on the medical panel's findings, the Board determined that "[t]he limitations from Mr. Guzman's impairments may hinder his ability to do specific tasks, such as frequent reaching or repetitive bending." But in the very next sentence, it asserts "Mr. Guzman can bend, stoop and squat frequently." Finally, nothing in the Board's order suggests that it even considered evidence regarding the prospective job market.

¶19 The Board's reliance on the medical panel's three-paragraph report above all the other evidence, and its contradictory findings, leave doubt about whether "a reasonable mind might accept as adequate the evidence supporting the decision," particularly with respect to the Board's conclusion that Guzman failed to demonstrate that he cannot perform other work reasonably available. *See Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 35, 164 P.3d 384 (citation and internal quotation marks omitted). The most pertinent evidence before the Board on this point was Dr. Galli's report—evidence which the Board largely ignored.


CONCLUSION

¶20 In sum, we conclude the Board did not correctly interpret Utah Code subsection 34A-2-413(1)(c)(ii). We therefore set aside its order and, pursuant to Utah Code subsection 63G-4-404(1)(b)(v), remand the case to the Board for further proceedings. We further instruct the Board to make a determination as to Guzman's permanent total disability claim

consistent with this opinion by making factual findings based on the appropriate legal standards and based on the evidence as a whole, including the medical panel's report, Guzman's medical records, his testimony, and the vocational assessment conducted by Dr. Galli.

_____